**BASCOM LAUNDER CORP. et al. v. TELECOIN CORP. et al.**

No. 108, Docket 22490.

United States Court of Appeals Second Circuit.

Argued Dec. 8, 1952.

Decided April 20, 1953.

Writ of Certiorari Denied June 15, 1953.

See 73 S.Ct. 1133.

·Arnold Malkan, New York City (Cyrus Austin and David H. Isacson, New York City, of counsel), for plaintiffs-appellants.

Hawkins, Delafield & Wood, New York City (Webster, Sheffield & Chrystie, Bethuel M. Webster and Frederick P. Haas, Franklin S. Wood and Clarence Fried, New York City, of counsel), for Telecoin Corp.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

### I. Defendant's Appeal

#### 1. The Clayton Act issue.

The complaint charged the violation of §§ 1 and 2 of the Sherman Act and § 3 of the Clayton Act. Plaintiffs demanded a jury trial. The jury found that the defendant sold Bendix machines to the plaintiffs under tie-in contracts restricting the use of meters, boilers, clocks, soaps, schedule pads, and like commodities, to those supplied by the defendant. The jury also found that such tie-in arrangements did not tend to create a monopoly or substan-

tially to lessen competition in commerce. Whether or not this latter question was correctly submitted to the jury under International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20—see Lockhart & Sacks, Exclusive Arrangements, 65 Harv.L.Rev. 913—is not before us, since plaintiffs have not appealed as to that aspect of the case.

#### 2. The Sherman Act issue.

(a) Defendant argues that the judgment cannot stand because the jury returned a verdict inconsistent in respect to damages. Apart from the fact that, if there were inconsistency, it would not ordinarily cause reversal, we see none here: As the jury found no violation of the Clayton Act, it could of course award no damages on that account. But if the Sherman Act was violated, the actual damages flowing from that violation may well have included the additional amount which the plaintiffs had to pay because of the tie-in purchases they were compelled to make. Cf. Federal Trade Commission v. Motion Picture Adv. Co., 344 U.S. 392, 397, 73 S.Ct. 361.

(b) The judge said in his charge: "We come now to the second final theory upon which the plaintiffs might possibly recover. As we have already indicated, this theory arises from a conspiracy and combination of defendants with * * * Bendix, the manufacturer, and its distributors, especially Bruno-New York, Inc. It is based upon violation of the Sherman Act and especially. Section 1 of that act. * * * The principal evidence offered in support of this conspiracy theory is a written contract between Bendix and Telecoin * * * This agreement amounted to a contract, combination and conspiracy in restraint of trade or commerce in violation of the Sherman Act as a matter of law." Defendant's counsel made a timely objection.[1] The judge's statement was erroneous, for it amounted to a directed verdict for plaintiffs on this issue (except as to

---

1. "I object to that portion of the charge wherein your Honor instructed the jury that the agreement between Bendix and Telecoin is a conspiracy as a matter of law."

damages to the several plaintiffs). This was wrong in the light of United States v. Bausch & Lomb Optical Co., D.C., 45 F. Supp. 387, 398-399, by which we feel bound since, on the matter here pertinent, the Supreme Court affirmed in 321 U.S. 707, 719, 64 S.Ct. 805, 88 L.Ed. 1024 (although by a four-to-four decision and without opinion).

There a manufacturer agreed to sell one of its products to no one other than a single distributor. Judge Rifkind—relying on United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 46 L.R.A. 122, affirmed 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136, and on the Restatement of Contracts §§ 515 and 516—said, [45 F.Supp. 398] that the Sherman Act was not violated, because the manufacturer had no monopoly of the product, and the "restraint of trade" was (a) ancillary to a reasonable main purpose—a source of supply to the distributor—and (b) fairly protective of that distributor's interests but not so large as to interfere with the interests of the public.

The contract in the instant case was therefore not unlawful in and of itself.[2]

The plaintiffs could win only if they proved (1) that Bendix had a monopoly in fact of the product it sold to Telecoin and/or (2) the exclusive arrangement, as carried out, was without a reasonable economic basis and merely served as an instrument for unduly restraining trade.[3] The error in the charge might have been harmless if the evidence as to (1) or (2) had been so indisputable as to leave nothing for the jury to decide on the issue.[4] The evidence, however, was not so unequivocal, but, being in conflict and resting on oral as well as documentary evidence, was such that the jury might reasonably have drawn an inference in favor of either side.[5] The judge's charge, in taking the question from the jury, was reversible error.

## II. Plaintiffs' Cross-Appeal

■■■ 1. Since the defendant set up its registered trade-mark as a defense, we think this was an "action involving a registered mark" within § 37 of the Lanham Act, 15 U.S.C.A. § 1119, conferring jurisdiction to order the mark's cancellation.[6] The evidence so clearly shows that the

2. See also United States v. Kissel & Harned, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168.

3. Plaintiffs point to facts which they assert differentiate this case from Bausch & Lomb, supra, viz., that this was not really an exclusive distributorship, that Bendix was implicated in the restrictions on the operators, and that Bausch & Lomb had no patent or monopoly. We think none of these factors significant: Telecoin was an exclusive distributor in the commercial field, and the relationship of Bendix to the agreement is a jury question, as is the question of whether Bendix had a monopoly in the instant case.

4. See Indiana Farmer's Guide Publishing Co. v. Prairie Farmer Publishing Co., 293 U.S. 268, 281, 55 S.Ct. 182, 79 L.Ed. 356.

5. In support of point (1), plaintiffs put in evidence a survey by the "American Washer & Ironer Manufacturers' Association," which they maintain showed that Bendix made a large majority of the automatic washing-machine equipment in the United States. But the evidence was such that the jury might reasonably have inferred that the Association did not include all washing-machine manufacturers, and that there was no showing that all of the members reported.

Concerning the second point, on the evidence the jury could reasonably have found that defendant used the exclusive distributorship to force plaintiffs to sign franchises, pay fees, conform to store specifications, and purchase supplies. But on the evidence the jury could reasonably have found to the contrary, i. e., that the franchises were voluntary with the operators who voluntarily signed to obtain use of the name "Launderette"; the jury could also have found that the "override" paid by Telecoin covered costs to distributors of services performed under machine warranties, and of carrying special inventory for the commercial machine.

Also in dispute was the value of the services rendered by Telecoin to its operators; a factor bearing on the economic justification of the exclusive arrangement.

6. See also 15 U.S.C.A. § 1115(b) (7).

mark was merely descriptive that the judge should have directed the cancellation of its registration.

 2. We think there was a sufficiently "common question" and a sufficiently "common relief" sought to render this a spurious class suit under Rule 23(a)(3). But petitions for intervention made previous to the trial were properly denied, in the court's discretion, when plaintiffs refused to consent to an adjournment to permit examination before trial of the proposed intervenors. The judge did not err in refusing to hold open the judgment to permit persons to intervene after the verdict. The suggestion in York v. Guaranty Trust Co., 2 Cir., 143 F.2d 503, 528–529, does not apply to a jury case after the trial has concluded, for it would involve a new hearing of the evidence by the jury.

On defendant's appeal, reversed and remanded.

On plaintiffs' cross-appeal, reversed and remanded with directions to enter an order cancelling the defendant's trademark.