243 F.2d 422
 100 U.S.App.D.C. 165, 19 P.U.R.3d 229
 RAILWAY EXPRESS AGENCY, Incorporated, a corporation, Petitioner
v.
CIVIL AERONAUTICS BOARD, Respondent, Flying Tiger Line,
Inc., Intervenor, United Parcel Service-Air, Inc.,
Intervenor, American Airlines, Inc.,
Intervenor, Shulman, Inc., Intervenor.
 No. 13375.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 10, 1957.
Decided March 28, 1957.
 
 [100 U.S.App.D.C. 166] Mr. John E. Powell, Washington, D.C., with whom Messrs. Arthur P. Drury and John M. Lynham, Washington, D.C., were on the brief, for petitioner.
 Mr. Gerald F. Krassa, Attorney, Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, General Counsel, Civil Aeronautics Board, John H. Wanner, Associate General Counsel, Civil Aeronautics Board, O. D. Ozment, Chief, Litigation and Research Division, Civil Aeronautics Board, and Daniel M. Friedman, Attorney, Department of Justice, were on the brief, for respondent.
 
 
 1
 Mr. Elmer E. Batzell, Washington, D.C., with whom Mr. Norman L. Meyers, Washington, D.C., was on the brief, for intervenor, Flying Tiger Line, Inc.
 
 
 2
 Mr. Edgar F. Czarra, Jr., Washington, D.C., with whom Messrs. Howard C. Westwood and Peter S. Craig, Washington, D.C., were on the brief, for intervenor, American Airlines, Inc.
 
 
 3
 Mr. John A. Kendrick, Washington, D.C., for intervenor, Shulman, Inc.
 
 
 4
 [100 U.S.App.D.C. 167] Messrs. William C. Burt and Alan Y. Naftalin, Washington, D.C., entered appearances for intervenor, United Parcel Service-Air, Inc.
 
 
 5
 Before EDGERTON, Chief Judge, and FAHY and DANAHER, Circuit judges.
 
 
 6
 FAHY, Circuit Judge.
 
 
 7
 Railway Express Agency, Inc., petitions for review of an order of the Civil Aeronautics Board of April 13, 1956. The order prescribed minimum rates 'only for a period of one year' for a service known as 'deferred air freight.' Deferred air freight is defined as property received for interstate transportation by air on a space-available basis after accommodation of all other revenue traffic. Property so transported is not released to the consignee for a specified number of days, so as to slow down delivery in comparison with regular, or first-line, air freight for which a higher rate is charged.
 
 
 8
 The order grew out of a rule-making proceeding[1] which had been pending since 1947 in a continuous scrutiny by the Board of minimum rates it had approved. American Airlines, Inc., on October 6, 1955, filed in those proceedings a petition to amend the minimum rates to enable it to initiate a deferred freight service.[2] The purpose of this proposed new service was to utilize more fully the cargo bins built under the passenger compartments in aircraft which transport both passengers and cargo. Much of this space was unused, particularly during daytime flights. And there was also considerable unused capacity in all-cargo aircraft as well. After extensive proceedings the Board on February 20, 1956, rejected American's proposals for various reasons, but itself initiated a tentative order, with an accompanying opinion, projecting minimum rates and other conditions for a deferred air freight service. The order now under review followed in due course.
 
 
 9
 Petitioner conducts the express business on the railroad lines of the United States and is controlled by the railroads through stock ownership. Since 1929, while continuing its rail transportation, petitioner has also engaged extensively in the transportation of property by air under agreements with the principal domestic airlines. Its air express operations, rates and schedules are subject to regulation by the Board. In short, petitioner is a huge user of airlines and railroads, and of trucks in an ancillary capacity, for the transportation of property. We have no doubt as to its standing to obtain review of the order.
 
 
 10
 Petitioner's challenge to the order is threefold:
 
 
 11
 1. It says that the evidence relied upon by the Board was adduced in connection with American's rejected proposals and, therefore, could not be used to support the deferred air freight service adopted by the Board. We are unable to accept this view. Although the evidence came before the Board in connection with American's proposals it was available to support the Board's own proposals which emanated from the same investigative proceedings. Petitioner's contention is inconsistent we think with the provisions of section 1002(d) of the Civil Aeronautics Act, 52 Stat. 1018 (1938), 49 U.S.C. § 642(d) (1952), 49 U.S.C.A. § 642(d), which authorizes the Board, in rejecting the proposal of a carrier, to 'determine and prescribe the lawful rate * * * classification, rule, regulation, or practice thereafter to be made effective.' See Ayrshire Collieries Corp. v. United States, 335 U.S. 573, 582-583, 69 S.Ct. 278, 93 L.Ed. 243, decided under comparable provisions of the Interstate Commerce Act, 15 U.S.C.A. §§ 2, 3(1), 15(1, 7).[3]
 
 
 12
 [100 U.S.App.D.C. 168] 2. There remains the question, however, whether the evidence, though available to the Board, was sufficient to support the rates. These are fixed at a minimum level amounting to 65% of the existing general minimum freight rates, except that the minimum level for eastbound deferred freight is 55% of the present minimum rates. These levels were adopted at the suggestion of counsel of the Bureau of Air Operations, who explained that the suggested rates were slightly above the indirect or out-of-pocket costs of a new service such as the Board authorized. Bureau counsel had placed in evidence an exhibit showing the indirect transportation costs of two principal all-cargo carriers, Slick and Flying Tiger. The reliability of the exhibit is not challenged,[4] and it was evidence upon the basis of which the expertise of the Board could form the judgment reflected in the instant rates, especially when it is remembered that the order is experimental and temporary. The service for which the rates were fixed was entirely new. Cost or expense data based upon actual operation of the service were not available. In the circumstances an informed estimate covering an experimental period, and based upon the experience of those actually transporting freight by air, furnished a reasonable foundation for the rates fixed. Furthermore, the evidence relied upon was uncontradicted. See note 3 supra.
 
 
 13
 3. Petitioner contends, further, that the rates will produce less gross revenue than the cost to the carriers of furnishing the service and thus permit unfair and destructive competitive practices in violation of section 2(c) of the Act, 49 U.S.C.A. § 402(c);[5] and in violation also of the national transportation policy declared in the preamble of the Interstate Commerce Act of 1940, 54 Stat. 899, 49 U.S.C. note preceding § 1 (1952), 49 U.S.C.A. note preceding section 1.
 
 
 14
 It is true, as we have seen, that the prescribed rates do not bear fully all costs of transportation of the deferred freight, but only those costs or expenses entailed separately by the new service, plus a profit. This alone, however, does not render the rates illegal as unfair and destructive competitive practices. There is no inflexible requirement that rates be calculated on a fully allocated cost basis.[6] We agree with the Board that:
 
 
 15
 '* * * economic considerations do not demand that at all times the rates for any class of traffic or type of service must cover the fully allocated cost of carrying that traffic or providing that service; rather the rates must be reasonably related to the costs.' Air Freight Investigation, 9 C.A.B. 340, 344-45.
 
 
 16
 The Board, pursuant to section 1002(e) of the Act, seeks to encourage the use of presently unused space by fixing lower rates than for regular transportation by air. Taking account of possible competitive inroads upon regular air freight service, and as tending to lessen the effect of the lower rates on the [100 U.S.App.D.C. 169] regular service, the order of the Board requires delivery to be deferred. Petitioner's attack is not on the validity of the service itself but on the particular minimum rates set for an experimental year. The method used by the Board in arriving at these rates for this period we think was a reasonable one in trying out the new plan, in testing its ability to gain greater volume of air freight, and in learning of the impact of the new service upon others, like petitioner, who might be affected. The opportunity for reappraisal and reconsideration at the end of the experimental period, if proper steps to that end are initiated, are open to petitioner, or may be taken by the Board itself, which has explicitly retained jurisdiction so to do.
 
 
 17
 Furthermore, the record before us, made before the order went into effect, contains no data as to what actual effect the new rates have upon the competitive position of petitioner, or upon other types of cargo transportation by air or, if it were deemed relevant, by rail. There is, then, no evidence upon which we can say that the rates, on their face reasonable, are in fact unfair and destructive to competition.
 
 
 18
 The reasons which lead us to hold the rates not to be violative of section 402(c), by analogy lead to the conclusion that they are not 'unjust discrimination' within the meaning of section 404(b) of the Act.
 
 
 19
 Affirmed.
 
 
 
 [1]
 Air Freight Rate Investigation, Docket No. 1705, et al
 
 
 [2]
 American had filed a tariff for such a service September 12, 1955, but it was rejected by the Board as it was below the then established minimum rate level
 
 
 [3]
 Petitioner was a party and did not request an opportunity, when the Board came forth with its own proposals, to adduce evidence in addition to that already in the record
 
 
 [4]
 Petitioner does point out that reliance on the Slick and Flying Tiger data stemmed from a 1948 proceeding, Air Freight Investigation, 9 C.A.B. 340, 348, where the usefulness of such data was determined; but the data itself which supports the present order were current
 
 
 [5]
 Section 2 reads in pertinent part:
 'In the exercise and performance of its powers and duties * * * the Board shall consider the following, * * * as being in the public interest, and in accordance with public convenience and necessity--
 'c. The promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences of advantages, or unfair or destructive competitive practices.'
 
 
 [6]
 Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 288, 54 S.Ct. 692, 78 L.Ed. 1260; Lang v. Railroad Commission of State of California, 2 Cal.2d 550, 42 P.2d 639; Transcontinental Cases of 1922, 74 I.C.C. 48, 68-71; All American Airways, Inc. v. Abilene and Southern Railway Co., 297 I.C.C. 313