**PACKARD MOTOR CAR COMPANY et al., Appellants,**

v.

**The WEBSTER MOTOR CAR COMPANY, Appellee.**

**The WEBSTER MOTOR CAR COMPANY, Appellant,**

v.

**PACKARD MOTOR CAR COMPANY et al., Appellees.**

**Nos. 13152, 13153.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 18, 1956.

Decided April 18, 1957.

Petition for Rehearing In Banc Denied May 16, 1957.

---

Mr. Harold L. Smith, New York City, with whom Messrs. Robert W. Barker, Louis M. Denit, Washington, D. C., Jerome G. Shapiro and Richard P. McGrath, New York City, were on the brief, for Packard Motor Car Co., and others.

Messrs. William J. Hughes, Jr., Washington, D. C., and Donald D. Webster, Salisbury, Md., with whom Mr. William E. Leahy, Washington, D. C., was on the briefs, for Webster Motor Car Co.

Before EDGERTON, Chief Judge, and PRETTYMAN and BAZELON, Circuit Judges.

EDGERTON, Chief Judge.

Packard Motor Car Company and two of its officers appeal from a judgment for $570,000 in favor of Webster Motor Car Company, a former Packard dealer in Baltimore, for alleged violation of the Sherman Anti-Trust Act. 15 U.S.C.A. §§ 1, 2, 15. The essential facts are not disputed.

There were formerly four dealers in Packard cars in Baltimore. In 1953 there were three, of which Webster was one. The usual dealer contract in the automobile business, and the contract between Packard and Webster, were for one year, with no option of extension. It was the custom in the business to extend contracts, from year to year, "barring some reason for cancellation." Webster and Packard had extended their contracts from year to year a considerable number of times.

In 1953 Zell Motor Car Company, the largest of the three Baltimore dealers in Packard cars, told Packard that Zell was losing money and would quit unless Packard gave it an exclusive contract. Packard told Zell it would do so, and told Webster and the other Baltimore dealer that their contracts would not be renewed. After Webster protested and threatened suit, Packard offered Webster the usual one-year renewal but refused to promise more. Packard told Zell, in effect, that this would be Webster's last renewal. Webster declined Packard's offer, quit the business, and brought this suit.

The District Court submitted to the jury the question whether there was an unreasonable restraint of trade, and also whether there was an agreement or attempt to monopolize. The jury found for the plaintiff and awarded $190,000

damages, which the court trebled in accordance with the statute. Motions for judgment notwithstanding the verdict, and for a new trial, were denied. The court held that the jury had "a right to reach the conclusion that an agreement on the part of the manufacturer with one of its own dealers to terminate the franchise of all competitors and to grant to him a monopoly within a certain area, is an agreement in unreasonable restraint of trade, or an agreement to monopolize." Webster Motor Car Co. v. Packard Motor Car Co., D.C., 135 F. Supp. 4, 9.

We think the defendants were entitled to judgment. We agree substantially with Schwing Motor Co. v. Hudson Sales Co., D.C.D.Md.1956, 138 F.Supp. 899, affirmed 4 Cir., 1956, 239 F.2d 176.

■ 1. There was no monopoly, or attempt or conspiracy to monopolize, within the meaning of the Sherman Act. The cellophane case, which had not been decided when the present case was tried, makes this clear. The Supreme Court there said: "this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product." And the Court held that "In considering what is the relevant market for determining the control of price and competition * * * commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce', monopolization of which may be illegal." The Court accordingly held that, although du Pont

produced about 75% of the cellophane sold in this country, there was no monopoly, because "the relevant market" was flexible packaging materials, including such things as glassine, waxed paper, and foil, as well as cellophane, and cellophane accounted for only 17.9% of this market. United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 393, 395, 399–400, 76 S.Ct. 994, 1006, 1007, 100 L.Ed. 1264. Since there are other cars "reasonably interchangeable by consumers for the same purposes" as Packard cars and therefore in competition with Packards, an exclusive contract for marketing Packards does not create a monopoly. And there is no evidence of any attempt or conspiracy to create a monopoly, since there is no evidence of any attempt to get control of the relevant market.

■ 2. There was no contract or conspiracy in restraint of trade within the meaning of the Sherman Act. As the court informed the jury, it has long been clear that only unreasonable restraints of trade are unlawful. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619. When an exclusive dealership "is not part and parcel of a scheme to monopolize and effective competition exists at both the seller and buyer levels, the arrangement has invariably been upheld as a reasonable restraint of trade. In short, the rule was virtually one of *per se* legality" until the District Court decided the present case.[1] Of Packard's 1600 dealers, 1100 were the only Packard dealers in their cities, some of which were nearly as large as Baltimore, and such a ratio

1. Handler, "Annual Antitrust Review", 11 Record of the Ass'n of the Bar of the City of New York, 367, 370 (1956). Fargo Glass & Paint Co. v. Globe American Corp., 7 Cir., 201 F.2d 534, certiorari denied 1953, 345 U.S. 942, 73 S.Ct. 833, 97 L.Ed. 1368; Bascom Launder Corp. v. Telecoin Corp., 2 Cir., 204 F.2d 331, certiorari denied 1953, 345 U.S. 994, 73 S.Ct. 1133, 97 L.Ed. 1401; United States v. Bausch & Lomb Optical Co., D.C.S.D. N.Y., 45 F.Supp. 387, 398–399, affirmed by an equally divided Court 1944, 321 U.S. 707, 719, 64 S.Ct. 805, 88 L.Ed. 1024. Cf. Federal Trade Commission v. Raymond Bros.-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448; G. & P. Amusement Co. v. Regent Theater Co., D.C., 107 F.Supp. 453, affirmed 6 Cir., 216 F.2d 749; Boro Hall Corp. v. General Motors Corp., 2 Cir., 124 F.2d 822; Hudson Sales Corp. v. Waldrip, 5 Cir., 211 F.2d 268; Herren Candy Co. v. Curtiss Candy Co., D.C., —— F.Supp. ——.

was typical in the automobile industry. The fact that any other dealers in the same product of the same manufacturer are eliminated does not make an exclusive dealership illegal; it is the essential nature of the arrangement. The fact that Zell asked for the arrangement does not make it illegal. Since the immediate object of an exclusive dealership is to protect the dealer from competition in the manufacturer's product, it is likely to be the dealer who asks for it.[2]

The short of it is that a relatively small manufacturer, competing with large manufacturers, thought it advantageous to retain its largest dealer in Baltimore, and could not do so without agreeing to drop its other Baltimore dealers. To penalize the small manufacturer for competing in this way not only fails to promote the policy of the antitrust laws but defeats it.

 3. Though Packard had formerly expressed an intention not to renew its contract with Webster, Packard offered and Webster refused the usual renewal. That Packard had agreed with Zell not to renew Webster's contract again when the proffered renewal expired is immaterial, not only because the agreement was legal but also because it inflicted no damage.

The judgment in favor of Webster is reversed. Webster's cross-appeal concerning the amount of Webster's attorneys' fee is dismissed as moot.

No. 13152 reversed; No. 13153 dismissed.

BAZELON, Circuit Judge (dissenting).

Webster and Zell were competing Packard automobile dealers in Baltimore. In 1952 Packard served notice of termination of Webster's dealership, but then, after Webster's protest, offered to renew the dealership for only one year without further renewal.

I think the court properly instructed the jury upon the law applicable to conspiracies or combinations in restraint of trade in violation of § 1 of the Sherman Act and that the evidence supports the jury's finding in respect thereto. It is therefore unnecessary to decide whether the determination below of a conspiracy to monopolize in violation of § 2 may also be sustained.

There was evidence that Zell had asked Packard to eliminate Webster as a competing Packard dealer; that Packard had never before considered that one dealer could be adequate representation in Baltimore; that Packard had found Webster to be a satisfactory dealer with a good organization; that there was an "understanding" between Zell and Packard, and that Packard had "agreed" with Zell that Webster's franchise be ended; and that, when Webster balked at his demise and threatened to bring an action for damages, Packard had offered Webster a renewal of its franchise in the usual form for one year, which Packard had agreed with Zell would be a final renewal. As a Packard memorandum put it: "This * * * was reviewed in detail and agreed to by Mr. Zell."

From this evidence the jury could have found—as it apparently did—that Webster's elimination as a dealer resulted not from a unilateral decision by Packard in selecting its customers, but rather from an agreement between Packard and Zell to eliminate Zell's competitor and make Zell the sole distributor of Packard cars in Baltimore; in simple terms, that it was an agreement which amounted to a combination or conspiracy to get rid of Webster.[1]

The "common right" of an individual to engage in a lawful calling was pro-

---

2. Handler, supra note 2, at page 372.

1. We are not called upon to decide whether § 1 of the Sherman Act applies to a manufacturer who, after a discussion with one dealer, decides to make the latter his exclusive distributor, cutting off all others, for the purpose of improving the manufacturer's competitive position vis-a-vis more powerful manufacturers. Cf. Schwing Motor Co. v. Hudson Sales Co., D.C.D.Md.1956, 138 F.Supp. 899, 906, affirmed 4 Cir., 1956, 239 F.2d 176. That is not this case.

tected against restraints at common law,[2] is encompassed within the protection of the Fourteenth Amendment [3] and forms the very basis of the Sherman Act.[4] The purpose of the Act is to protect the individual business man as well as to assure to the consumer the benefits flowing from free competition. Applied to a dealership situation, the Act does not interfere with the manufacturer's right to select his dealers but it does prevent him from combining and conspiring with one not to deal with another.[5]

Schwing Motor Co. v. Hudson Sales Co., D.C.D.Md.1956, 138 F.Supp. 899, affirmed 4 Cir., 1956, 239 F.2d 176, disagrees with the decision here under review. The latter case would limit the manufacturer's right to select his own customers by the requirement that he make no agreement with one to exclude another. Schwing would recognize this limitation only "if the agreement is a horizontal one between competitors, or if the manufacturer dominates the market in the commodity." 138 F.Supp. at page 906. In this I think Schwing is wrong. The Supreme Court has held that, even apart from monopolistic effect, a *vertical* agreement which excludes a competitor of one of the parties from a substantial market violates § 1 of the Sherman Act.[6]

To avoid the application of the Sherman Act Packard contends that, because Webster rejected the proffered one-year renewal, the jury could not find that Packard refused to deal with Webster. But this contention is not persuasive. The record contains ample evidence from which the jury could have found that the renewal offer was not made in good faith, was prompted by Webster's threat to sue, and resulted from an agreement between Packard and Zell that it would be the last renewal.

2. Darcy v. Allen, 11 Coke 84b, 77 Eng.Rep. 1260 (1576).

3. Butchers' Union v. Cresent City Co., 1884, 111 U.S. 746, 4 S.Ct. 652, 28 L. Ed. 585, concurring opinions of Mr. Justice Field and Mr. Justice Bradley.

4. Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 497–498, 60 S.Ct. 982, 84 L. Ed. 1311.

5. Even individually conceived refusals to deal may be an element in a violation of § 1 of the Sherman Act. United States v. Bausch & Lomb Optical Co., 1944, 321 U.S. 707, 723, 64 S.Ct. 805, 88 L.Ed.

1024; Federal Trade Comm. v. Beech-Nut Packing Co., 1922, 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307; Report of the Attorney General's National Committee to Study the Antitrust Laws (1955), at page 134; cf. Dr. Miles Medical Co. v. John D. Park & Sons Co., 1911, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502.

6. See Standard Oil of California and Standard Stations v. United States, 1949, 337 U.S. 293, 305, 69 S.Ct. 1051, 93 L.Ed. 1371, explaining International Salt Co. v. United States, 1947, 332 U.S. 392, 68 S. Ct. 12, 92 L.Ed. 20.