**Lou POLLER, Plaintiff,**

v.

**COLUMBIA BROADCASTING SYSTEM, INC., CBS Television, J. L. Van Volkenburg, H. K. Akerberg, Bartell Broadcasters, Inc., and Thad Holt, Defendants.**

**No. 3761–56.**

United States District Court District of Columbia.

June 3, 1959.

William M. Smith, Washington, D. C., and Abraham L. Freedman, Philadelphia, Pa., for plaintiff.

Leon R. Brooks, Washington, D. C., and Samuel I. Rosenman. New York City, for defendants.

HOLTZOFF, District Judge.

This is an action to recover triple damages for violations of the antitrust laws. The action is before this Court at this time on defendants' motion for summary judgment.

The suit is predicated both on Section 1 of the Sherman Act, 15 U.S.C.A. § 1, which proscribes unreasonable restraints of trade, and Section 2 of the statute, 15 U.S.C.A. § 2, which bans monopolies and attempts to monopolize. The plaintiff is the assignee of the owner of a television station that was operating in the City of Milwaukee under the call letters of WCAN. It was a UHF station. The plaintiff claims that as a result of activities which it is asserted were in violation of the Sherman Act the defendant, Columbia Broadcasting System, Inc., practically destroyed the value of the plaintiff's station.

It must be borne in mind at the outset that the issues presented in an action brought by a private individual for triple damages caused by violations of the antitrust laws are entirely different from those in an action brought by the United States to enjoin such violations. In a private action it is not sufficient to show violations of the antitrust laws committed by the defendant. That is all that the government need show in an action brought by the United States. In a private action, however, it is essential for the plaintiff to show that such violations resulted in an injury to the plaintiff.

The facts are not in dispute so far as their salient features are concerned, and insofar as there is any difference in the approach or inferences to be drawn from the facts the Court necessarily will construe them most favorably towards the plaintiff since it is the defendants who move for summary judgment. The defendant, Columbia Broadcasting System, Inc., generally known as

CBS, is a business concern that produces shows or programs to be broadcast by individual television stations. It distributes its shows or programs among numerous television stations throughout the United States, making a contract with each of them known as an affiliation contract, by which it undertakes to supply broadcasting material for the station, and the station in turn undertakes to allocate a certain amount of time for the production of such programs. In this instance, the plaintiff's station, WCAN, had an affiliation contract with the principal defendant, Columbia Broadcasting System, Inc. This affiliation contract, as was true with many other such contracts, contained a provision reserving to CBS the right to cancel at the end of any six months' period. In other words, CBS could cut off the affiliation of the station on six months' notice at any time.

The plaintiff's station was a UHF station. There was at the time in question another UHF station operating in Milwaukee. Under the then existing rules of the Federal Communications Commission a broadcasting corporation such as CBS was not permitted to become the owner of more than five television stations. The rule was modified so as to permit each television broadcasting corporation, in addition to owning five VHF stations, also to acquire not more than two UHF stations. When that rule became effective or was about to become effective, CBS determined to acquire a UHF station in Milwaukee. Instead of, however, acquiring the plaintiff's station it decided to acquire his competitor's station, WOKY. It did so by procuring an option on WOKY through an intermediary, so that the owner of WOKY was not aware that the real purchaser was CBS. Having procured this option, CBS then cancelled the affiliation contract with the plaintiff's station, taking advantage of the six months' provision. Obviously the cancellation of the affiliation contract seriously injured the plaintiff and greatly reduced the value of his station.

The basic question in this action is, however, whether this injury is *damnum absque injuria* or whether it was caused by any violation of the antitrust laws. It is claimed that certain uniform provisions that were inserted in affiliation contracts generally by CBS known as clauses providing for option time and similar provisions constitute illegal restraints of trade in violation of Section 1 of the Sherman Act. It is also claimed that as a result of the transaction just described CBS acquired a monopoly of UHF in Milwaukee in violation of Section 2 of the Act.

The view that this Court takes of the issues in this case makes it unnecessary to determine whether the challenged clauses in the affiliation contracts constitute a violation of the Sherman Act or whether a monopoly was created or existed in this instance. The question to be determined in this litigation is a much narrower one, namely, whether anything that the defendant did in respect to the plaintiff constituted a violation of either Section 1 or Section 2 of the Sherman Act. To repeat, what the plaintiff complains of is that when the defendant desired to purchase a UHF station in Milwaukee, it failed to buy his station but acquired his competitor's station and, further, that it cancelled his affiliation contract, as it had a right to do under the six months' provision.

■■ We must approach this question from the general principle that any person has a right to buy or sell from or to whom he chooses and he may deal or refuse to deal with anyone that he selects, provided he does not enter into an illegal conspiracy with someone else to exclude another person from the channels of trade. The leading case on this point is United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992. This case was but recently followed in this district in Orbo Theatre Corp. v. Loew's Inc., D.C., 156 F.Supp. 770, 779, affirmed 104 U.S.App.D.C. 262, 261 F.2d 380, certiorari denied 359 U.S. 943, 79 S.Ct. 725, 3 L.Ed.2d 677. Consequently,

the defendant was entirely within its rights in choosing to buy the competing station. It was also exercising its contract right to cancel the plaintiff's affiliation.

The Court is of the opinion that this case is governed by the case of Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D.C. 161, 243 F.2d 418. That case involved an automobile manufacturer who had several dealers selling the manufacturer's cars in the City of Baltimore. Each of the dealers had a contract or franchise, as it was known, the term of which was only one year. The plaintiff in that action was one of the dealers in question. One of the plaintiff's competitors came to the manufacturer and stated that he would not continue as a dealer unless the manufacturer agreed not to renew the plaintiff's franchise and to grant an exclusive agency to him. The manufacturer came to the conclusion that the plaintiff was less important to him than the competitor and accordingly declined to renew the plaintiff's franchise. Plaintiff brought suit for triple damages, alleging that the transaction constituted a conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act. The Court of Appeals for this Circuit held otherwise and reached the conclusion that the manufacturer was exercising his rights as a businessman.

A precisely similar situation was presented in a case decided in the Fourth Circuit, Schwing Motor Co. v. Hudson Sales Corporation, D.C., 138 F.Supp. 899, affirmed 239 F.2d 176. In both cases applications were made to the Supreme Court for writs of certiorari but were denied.[1]

So in the case at bar the defendant chose to exercise the option that the affiliation contract reserved to wit, of cancelling the agreement on six months' notice. The defendant chose to buy a competing station instead of buying the plaintiff's station. While there is no doubt that considerable financial hardship must have resulted to the plaintiff, nevertheless, the Court is of the opinion that such hardship constitutes *damnum absque injuria*. If the defendant had been violating the Sherman Act, either as to Section 1 or Section 2, which the Court is not deciding and in respect to which it is making no intimation, such alleged violations did not result in the damage that the plaintiff sustained. The plaintiff's loss resulted from the exercise by the defendant of the defendant's legal rights.

The Court concludes that the plaintiff is not entitled to recover and the defendants' motion for summary judgment is granted.

1. Schwing Motor Co. v. Hudson Sales Corp., 355 U.S. 823, 78 S.Ct. 30, 2 L. Ed.2d 38; Webster Motor Car Co. v. Packard Motor Car Co., 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38.