**UNITED STATES of America,**
**Plaintiff,**
v.
**VOLKSWAGEN OF AMERICA, INC.,**
**et al., Defendants.**
Civ. No. 1232-57.

United States District Court
D. New Jersey.
Feb. 24, 1960.

---

Crummy, Gibbons & O'Neill, by John J. Gibbons, Newark, N. J., for Volkswagen of America, Inc. Sereni, Herzfeld

& Rubin, by Walter Herzfeld, New York City, of counsel.

Bernard Hellring, Newark, N. J., for John Barry Distributors, Inc., and others. Rosenman, Goldmark, Colin & Kaye, by Malcolm Hoffmann and Norman Solovay, New York City, of counsel.

Steptoe & Johnson, by Stephen Ailes, Washington, D. C., of counsel, for Intercontinental Motors, for the motion.

Morris F. Klein, John D. Swartz, New York City, John H. Clark III, Donald Ferguson, New York City, contra.

FORMAN, Circuit Judge.

This action has been brought pursuant to Title 15 U.S.C.A. §§ 4 and 25, which are respectively Sections 4 of the Sherman Act and 15 of the Clayton Act, alleging violations of Section 1 of the Sherman Act, 15 U.S.C.A. § 1, and Section 3 of the Clayton Act, 15 U.S.C.A. § 14. The defendants are Volkswagen of America, Inc., (hereafter referred to as VOA), appointed exclusive importer of Volkswagen products effective January 1, 1956 by Volkswagenwerk G.m.b.H., and the fourteen distributors of those products in the United States.[1] The alleged co-conspirators not made defendants are Volkswagenwerk G.m.b.H., the German manufacturer (hereinafter referred to as VW), Volkswagen United States (hereinafter referred to as VUS) and the Volkswagen dealers in the United States.

The complaint alleges that since 1953 the defendants and co-conspirators have engaged in an unlawful conspiracy in violation of Section 1 of the Sherman Act and in violation of Section 3 of the Clayton Act. More specifically, paragraphs 6, 16, 17, 20 and 21 of the complaint, as amended by stipulation, allege the following:

"6. Volkswagenwerk G.m.b.H. (hereinafter referred to as "Volkswagenwerk"), a corporation organized and existing under the laws of the German Federal Republic has participated as a co-conspirator in the violation of Section 1 of the Sherman Act and in the violation of Section 3 of the Clayton Act as hereinafter charged, but is not made a defendant herein."

"16. Beginning in or about 1953, and continuing up to and including the date of the filing of this complaint, the defendants and the co-conspirators have been and now are engaged in a combination and conspiracy, and have been and are now parties to unlawful contracts, agreements and understandings among themselves, in unreasonable restraint of interstate trade and commerce in Volkswagen automobiles and parts, in violation of Section 1 of the Sherman Act."

"17. The unlawful combination and conspiracy has consisted of a continuing agreement and concert of action among the defendants and the co-conspirators, the substantial terms of which have been and are that:

"(a) Distributor defendants will sell Volkswagen automobiles and parts to dealers at wholesale prices fixed by Volkswagenwerk, VUS and VOA;

"(b) Co-conspirator dealers will sell Volkswagen automobiles and parts to purchasers at retail prices fixed by Volkswagenwerk, VUS and VOA;

"(c) Distributor defendants will sell Volkswagen automobiles and parts to franchised Volkswagen automobile dealers only;

"(d) Co-conspirator dealers will not sell Volkswagen automobiles to others for resale;

"(e) Each distributor defendant will sell Volkswagen automobiles and

---

1. John Barry Distributors Inc.; Brundage Motors, Inc.; Capitol Car Distributors, Ltd.; Competition Motors Distributors, Inc.; Hansen MacPhee Engineering Co., Inc.; Import Motors, Ltd.; Import Motors of Chicago, Inc.; Inter-Continental Motors Corp.; International Auto Sales & Service, Inc.; Reynold C. Johnson Co.; Midwestern VW Corp.; Riveria Motors, Inc.; Volkswagen Washington, Inc. and World-Wide Automobiles Corp.

parts to those franchised Volkswagen automobile dealers only who are located within the exclusive territory assigned to such distributor;

"(f) Each co-conspirator dealer will sell Volkswagen automobiles and parts to those customers only who reside within the exclusive territory assigned to such dealer;

"(g) Distributor defendants and co-conspirator dealers will not deal in or sell any automobiles or parts competitive with Volkswagen automobiles or parts;

"(h) Distributor defendants will terminate the sales agreements of, or reduce the quantities of Volkswagen automobiles allocated to, those dealers who do not adhere to the terms of the conspiracy."

"20. Beginning in or about 1953 and continuing up to and including the date of the filing of this complaint, VUS and defendant VOA while engaged in the aforesaid interstate commerce and in the course of such commerce, have sold Volkswagen automobiles and parts for resale in the United States to the distributor defendants on the condition, agreement and understanding that said distributors shall not deal in new foreign-manufactured automobiles or parts of any competitor of Volkswagenwerk, VUS or VOA. The effect of the aforesaid transactions may be to substantially lessen competition or tend to create a monopoly in the distribution and sale of new foreign-manufactured automobiles and parts in interstate commerce in violation of Section 3 of the Clayton Act.

"21. Beginning in or about 1953 and continuing up to and including the date of the filing of this complaint, the distributor defendants while engaged in the aforesaid interstate commerce and in the course of such commerce have sold Volkswagen automobiles and parts in the United States to dealer co-conspirators on the condition, agreement and understanding that said dealers shall not deal in new foreign-manufactured automobiles or parts of any competitor of Volkswagenwerk, VUS or VOA. The effect of the aforesaid transactions may be to substantially lessen the competition or tend to create a monopoly in the distribution and sale of new foreign-manufactured automobiles and parts in interstate commerce in violation of Section 3 of the Clayton Act."

The defendant VOA has made a motion under Rules 12(c) and 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in which the distributor defendants have joined

"* * * for an order directing dismissal of the following parts of the complaint or, alternatively, pursuant to Rule 16 thereof, for a pretrial order precluding the taking of testimony under the following parts of the complaint:

"*Part A:*

"(1) The allegations in paragraphs 16 and 17 of the complaint that the defendants and alleged co-conspirators conspired prior to January 1, 1956 to sell Volkswagen automobiles and parts at prices fixed by [VOA];

"(2) The allegations in paragraph 20 of the complaint that Volkswagen United States, Inc. violated section 3 of the Clayton Act and that [VOA] violated the said provision prior to January 1, 1956;

"(3) The allegations in paragraphs 16 and 17 of the complaint that the defendants and the alleged co-conspirators conspired that dealers would not sell Volkswagen parts to others for resale;

"(4) The allegations in paragraph 6 of the complaint that Volkswagenwerk G.m.b.H. participated in the alleged violation of section 3 of the Clayton Act.

"*Part B:* The allegations in paragraphs 16 and 17 of the complaint

that the terms of the alleged conspiracy comprised:

"(1) That distributor defendants would sell Volkswagen automobiles and parts to franchised Volkswagen dealers only;

"(2) That each distributor defendant would sell Volkswagen automobiles or parts to those franchised dealers only who are located within the exclusive territory assigned to such distributor;

"(3) That each dealer would sell Volkswagen automobiles and parts to those customers only who reside within the exclusive territory assigned to such dealer;

"(4) That dealers would not sell Volkswagen automobiles to others for resale."

Because of certain stipulated amendments to the complaint paragraphs A(1) and (3) of the motion have been withdrawn.

Essentially, then, the motion looks to the deletion of the allegations of paragraphs 6 and 20 of the complaint as "clearly unfounded in fact" and to a ruling that the allegations of paragraphs 17(c), (d), (e) and (f) even if true do not involve a violation of the Sherman Act.

In Part A, paragraph 2 of the motion the defendants contend that because VOA was not incorporated until October 1955 and did not participate in the distribution of Volkswagen products until January 1, 1956 as stated in the moving affidavit, all allegations that it violated the Clayton Act prior to 1956 as alleged in paragraph 20 should be dismissed. Further, say the defendants, because VUS is not a defendant any allegation that it violated the Clayton Act, irrespective of time, even if proved, fails to establish a right to relief against the present defendants and, therefore, any such allegation directed to VUS should be dismissed.

The defendants also contend, in Part A, paragraph 4, that any allegation that VW itself violated the Clayton Act (paragraph 6 of the complaint) ought to be dismissed because it is not a defendant and any showing of participation on its part as alleged would be merely "res inter alios acta."

The Government's reply to these objections is that VW owned both corporations and, as stated by VOA in its brief and in the moving affidavit, that VOA and VUS have an identity of personnel and purpose.

That there is some basis for the Government's contention is seen from the moving affidavit in which Mr. J. Stuart Perkins, now Sales and Organization Manager of VOA deposes that he was "connected with VUS during the entire period of its active operation", and has been continuously connected "with the distribution of Volkswagen automobiles in the United States * * * since early 1955."

Mr. Perkins describes the genesis of Volkswagen sales and promotion in this country as follows:

"16. VW started production of Volkswagen automobiles in Germany on a commercial scale in 1946. These automobiles were first sold in the American market beginning in 1949 by a corporation controlled by a New York importer, Max Hoffman, under a franchise for the eastern part of the country granted to it by VW. This franchise ended on December 31, 1953.

"17. Beginning in 1953, a number of distributors were appointed in the western United States and, in 1954, following termination of the Hoffman franchise, in the eastern United States. With minor exceptions the distributors then appointed and the territories for which these appointments were made, are identical with the present distributor defendants and the territories now serviced by them. The same as the Hoffman corporation had done until the end of 1953, each of these distributors bought directly from VW, imported its cars and parts and re

sold them to dealers appointed by it.

"18. Beginning January 1, 1956, [VOA] was appointed by VW as the exclusive importer of Volkswagen automobiles and parts. Since then, [VOA] itself has placed with VW, the orders for Volkswagen automobiles and parts, has imported these cars and has sold them to the distributors."

In its brief the Government represents that Mr. G. H. Lange, who is now Managing Director of VOA, formerly held "important positions" with VUS and VW in this country.

Copies of letters annexed to the affidavit of Mr. Morris Klein, the Government's attorney, indicate activity between VUS, VOA and certain distributors bearing upon distribution practices as early as 1955. Some of these letters were signed by Mr. Lange for VUS and VOA, and one letter was signed by Mr. Perkins for Mr. W. W. van de Kamp of VUS. Furthermore, on October 1, 1954, Mr. Lange signed a letter for VW itself.

Mr. Perkins further deposes that:

"I know of my own knowledge that [VUS] did not sell or contract to sell a single automobile or part [during the entire period of its active operation]."

But the Government maintains that an actual sale is not the determinant because VUS

" * * * could have acted for its parent and alter ego, Volkswagenwerk, and it could have and did aid, assist and abet such sales on such conditions."

That VUS was created by VW for the purpose of "rendering assistance in the distribution of Volkswagen products in this country" is attested by Mr. Perkins who further avers that

" * * * [VOA] was organized for the purpose of acquiring and operating an assembly plant at

North Brunswick, New Jersey, pursuant to a contract for the purpose thereof from Studebaker-Packard Corporation. The plan for operation of this plant and for assembly of Volkswagen automobiles in this country was subsequently abandoned and the property sold to The Okonite Corporation. * * *"

It appears from the foregoing that beginning in 1953 VW had contracts with the distributors in western United States and in 1954 with the distributors in the eastern United States,[2] which distributors Mr. Perkins describes in his affidavit as "identical with the present distributor defendants" with minor exceptions; that VW organized VUS in July 1955 to observe the American market and to render assistance in the distribution of VW products therein; that VW appointed VOA as the exclusive importer of its products in this country as of January 1, 1956; that VUS was and VOA is, a wholly owned subsidiary of VW having the same identity of personnel and purpose; and that "When, on January 1, 1956, [VOA] became the exclusive importer, the existing [distributor] agreements * * * were assigned by VW to [VOA] as a stopgap measure, pending preparation by [VOA's] American Attorneys of drafts for new distributor agreements."

██ Whether evidence concerning the activities of VW (irrespective of time) and of VUS as of 1953 (as alleged in paragraph 20 of the complaint) is admissible against VOA, the only one of the three actually named as a defendant, is an evidentiary question properly determined at trial. It is certainly aside from the objection to the present wording of paragraph 20 of the complaint. The recital therein that the activities of VUS and VOA had their inception "Beginning in or about 1953" is manifestly inaccurate in light of the conceded dates of their incorporation and paragraph 20 should be amended accordingly.

---

2. As stated in paragraphs 16 and 17 of Mr. Perkins' affidavit, quoted heretofore, the franchise in the East was held by a

New York importer, Max Hoffman, from 1949 to December 31, 1953.

In paragraph 6 of the complaint VW is described as a co-conspirator in violation of Section 1 of the Sherman Act and as a participant in the "violation of Section 3 of the Clayton Act *as hereinafter charged."* (Emphasis supplied.) Defendants object that there is no subsequent disclosure in the complaint charging VW with violating the Clayton Act. However, the words "as hereinafter charged" appear to apply to the participation of VW in the alleged violations of both acts and are not necessarily confined to the Clayton Act. In any event the complaint sufficiently informs the defendants that VW is alleged to have violated the Clayton Act although it is not named as a defendant.

■ Part B of the motion is directed to subsections (c), (d), (e) and (f) of paragraph 17 of the complaint. In their brief the defendants state that these allegations

> "are insufficient and that, either on the face of the complaint or in the context of indisputable facts set forth in the moving affidavit, the practices sought to be attacked thereby, if actually engaged in, would be entirely lawful."

With regard to the propriety of relief on the motion at this time the defendants maintain that if the practices alleged are legal per se,

> " * * * the issues presented on this branch of the motion could certainly be disposed of at this time.
> * * *
> "[and that] even if the legality of vertical assignments of territories and 'anti-bootlegging' would depend upon the reasonableness of these

practices, a trial would not be required and the issues could be decided now, since the facts against which their reasonableness must be tested will not be in dispute. * * "

In its brief and at oral argument, however, the Government maintained that the allegations in paragraph 17 are not susceptible of isolation,[3] because there is present in this case an allegation of price-fixing which activity the Government contends was enabled by the alleged agreements among the defendants and the co-conspirators.[4] This presents at least two fact questions viz., whether or not the business practices alleged in paragraphs 17(c), (d), (e) and (f) were designed to assist price maintenance and if so their utility in that connection.

It is in this regard that the matter at hand differs from Schwing Motor Co. v. Hudson Sales Corp., D.C.Md.1956, 138 F.Supp. 899, affirmed per curiam 4 Cir., 1956, 239 F.2d 176, and Packard Motor Car Co. v. Webster *Motor Car Co.,* 1957, 100 U.S.App.D.C. 161, 243 F.2d 418. Those cases were concerned with exclusive dealerships and did not involve allegations of price-fixing, a practice long since denominated illegal per se. Thus the allegation of price-fixing in this case precludes a determination at this time of the legal efficacy of the activity alleged in paragraphs 17(c), (d), (e) and (f) in terms of the underlying reasons therefor as set forth at length by VOA in its able brief.

I cannot, therefore, agree with the defendants that "the facts against which [the reasonableness of the alleged practices] must be tested will not be in dispute."

---

3. The Government does not concede that the practices alleged in paragraphs 17 (c), (d), (e) and (f) are legal per se. Rather it contends that at this point in the proceedings the presence of the price-fixing allegation makes such a consideration premature.

4. This follows Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct. 276, 279, 49 L.Ed. 518, in which Mr. Justice Holmes held, "The constituent elements,

as we have stated them, are enough to give to the scheme a body and, for all that we can say, to accomplish it. Moreover, whatever we may think of them separately, when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful * *. But they are bound together as the parts of a single plan. The plan may make the parts unlawful."

Nor am I able to agree with the defendants' contention that if the alleged practices were to be found legal per se, the allegations of paragraphs 17(c), (d), (e) and (f) at least, could be disposed of at this time. It does not follow that practices legal per se when considered alone, are necessarily so whatever the context in which they are found. Accordingly, the determination of the legality of the allegations of subsections (c), (d), (e) and (f) of paragraph 17 must abide the presentation of evidence in the case.

■ The motion to dismiss subparagraphs (c), (d), (e) and (f) of paragraph 17 of the complaint pursuant to Rule 12 or for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is denied. Similarly the motion to dismiss "The allegations in paragraph 6 of the complaint that Volkswagenwerk G.m.b.H. participated in the alleged violation of Section 3 of the Clayton Act" is denied.

■ The defendants' motion to dismiss the allegations of paragraph 20 of the complaint as stated in Part A(4) of the motion is denied subject to the plaintiff's amendment thereof as heretofore described.

An alternative motion is made under the second paragraph of Rule 16, which is as follows:

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non-jury actions or extend it to all actions."

Based thereon the defendants seek " * * * a pre-trial order precluding the taking of testimony * * *" as set forth in Parts A and B of the motion heretofore recited. The application for such an order is the equivalent of the main motion under Rules 12(c) and 56. The reasoning advanced for denying that motion dictates the same disposition of the alternative motion. It is therefore denied. That is not to say that the provisions of Rule 16 may not be invoked for the purpose of limiting the issues for trial at a future pre-trial conference.

An order should be submitted in conformity herewith.