LIGGETT & MYERS, INCORPORATED,
Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 76–1771.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1977.

Decided Dec. 29, 1977.

Joseph O. Rogers, Jr., Manning, S.C., and Harvey D. Myerson, New York City (Rogers, Riggs & Rickenbaker, Manning, S.C., C. Kenneth Shank, Jr., Kurt V. Blankmeyer and Webster & Sheffield, New York City, on brief), for petitioner.

Denis E. Hynes, Atty., F.T.C., Washington, D. C. (Robert J. Lewis, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, Jerold D. Cummins, Acting Asst. Gen. Counsel, Washington, D. C., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, and CRAVEN * and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

This Section 7 Clayton Act case [1] is addressed to the line of commerce implicating the production and sale of dog food engaged in by appellant Liggett & Myers, Inc., of Delaware, through its wholly owned subsidiary, Allen Products Company, on the one part, and on the other, by Perk Foods Co., Inc., also of Delaware. The acquisition of Perk by Liggett in 1969 is here assailed by the Federal Trade Commission as probably having the effect of substantially less-

---

\* Circuit Judge CRAVEN expressed his concurrence in this decision but died before the opinion was written.

1. Section 7, 15 U.S.C. § 18, as apt now reads: "No corporation shall acquire, directly or indirectly, the whole or any part of the stock or . . . assets of another corporation engaged also in commerce, where *in any line of commerce* in any section of the country, the effect of such acquisition *may be substantially to lessen competition,* or to tend to create a monopoly."

ening competition in violation of the statute. On this premise the Commission issued a complaint in 1973 and, after due hearing, in 1975 condemned the acquisition and affirmed the 1975 order of the Administrative Law Judge that, *inter alia,* Liggett "divest absolutely and in good faith all assets, properties, rights and privileges . . acquired . . . as a result of the acquisition of the assets and business of Perk Foods, Inc."

### The Facts

Commercial dog food generally and customarily is classified as dry, semi-moist, or canned. Dry, put up in the form of pellets or nuggets, is cereal- or soybean-based; semi-moist, offered in the form of hamburger, contains some meat plus cereal, sugar, and slight moisture, and is considered more nourishing than dry dog food; and canned—called wet, because of its greater moisture—is considered still more beneficial since it embodies meat, vegetables, eggs and fish as well as water and, in some cases, cereal. The canned is further graded as economy, regular and premium and in this order is said to be of varying quality because of increasing meat and decreasing cereal content.

Liggett, through Allen, produces, distributes and sells only the *premium* canned dog food "Alpo". Its new acquisition, Perk, is similarly engaged with an *economy* canned dog food known as "Vets".[2] The Commission, assimilating all categories of canned dog food as constituting but a single line of commerce within a broader, all-dog-food market, found that Allen and Perk were participating in the same line of commerce and thus were competitors. To the contrary, Liggett insists that Perk and Allen were not in the same line of commerce and were not competitors because of the distinct differences in quality and price of their

respective canned products. In replication, the Commission acknowledges this distinction of products and purveyors, but maintains that these circumstances merely establish submarkets without impairing the broader generic classifications.

Upon review of the record on Liggett's appeal, we see the Commission's determinative findings of fact as supported by substantial evidence,[3] and we observe no flaw in its legal conclusions. The Commission carried its burden to prove (1) the line of commerce it ascribed to Allen and Perk—all dog food—and (2) the probability that Liggett's acquisition of Perk would substantially lessen competition in this market and its submarkets.

### The Line of Commerce

 The geographical market has been stipulated by the parties as the entire country. Demarcation of the product market is as sketched, in *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 510 (1962), by this prescription:

> "The outer boundaries of a product market are determined by the reasonable interchangeability of use or cross-elasticity of demand between the product itself and substitutes for it."

Plainly the dog foods of Allen and Perk cannot be said to be non-interchangeable. *See United States v. E. I duPont de Nemours & Co.,* 351 U.S. 377, 394, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Indeed, they have precisely the same use and hence surely vie in a common product market. *See, e. g., Packard Motor Car Co. v. Webster Motor Car Co.,* 100 U.S.App.D.C. 161, 243 F.2d 418, 420 (1957), cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957) (all automobiles). Certainly their differences are not so arguably uncongenial as were the glass and metal containers which in *United*

---

**2.** Worth mentioning here is that Perk, although not a distributor of premium canned dog food, did manufacture it for Allen and, in addition packed every major type of dog food for various chain stores and dog food companies. Further, at the time of the acquisition both Perk and Allen had been involved in attempts of

varying success at entry into the dry dog food business.

**3.** *See* 15 U.S.C. § 21(c); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

*States v. Continental Can Co.,* 378 U.S. 441, 449, 84 S.Ct. 1738, 12 L.Ed.2d 953 (1964), were found to have a community of character and so to be encompassed within the same market. The Court there held, too, that the existence of submarkets was not destructive of the broader market. *Id.,* at 457–58, 84 S.Ct. 1738. *See,* also, *United States v. Phillipsburg Nat'l Bank & Trust Co.,* 399 U.S. 350, 360, 90 S.Ct. 2035, 26 L.Ed.2d 658 (1970).

These dog foods—dry, semi-moist and canned, both economy and premium—are, in reality, all welcome in the same kennel. The Commission altogether justifiably, in fact and law, put them in a single market. The products were certainly in competition, particularly over the long term.

### Impairment of Competition

■ The purchase of Perk by Liggett broke the law of Section 7, the Commission concluded, in that "the effect of such acquisition may be substantially to lessen competition." We place our confirmation of this determination upon the clear showing of the concentration of economic power in Liggett when, in January 1969, it acquired for $29,500,000 all of the capital stock and holdings of Ready Foods, later changing its name to Perk Food Company. As will become manifest, this posed a potential for, and foretold a probable lessening of, competition in the dog food market. *Brown Shoe Co. v. United States,* 370 U.S. at 323, 82 S.Ct. 1502.

That concentration and its tendency to increase comprise the touchstone for appraising the threat from a merger is squarely and trenchantly put by Mr. Justice Brennan in *United States v. Philadelphia National Bank,* 374 U.S. 321, 363, 83 S.Ct. 1715, 1741, 10 L.Ed.2d 915 (1963):

"This intense congressional concern with the trend toward concentration warrants dispensing, in certain cases, with elaborate proof of market structure, market behavior, or probable anticompetitive effects. Specifically, we think that a merger which produces a firm controlling an undue percentage share of the relevant

market, and results in a significant increase in the concentration of firms in that market, is so *inherently likely to lessen competition* substantially that it must be enjoined in the absence of evidence clearly showing that the merger is not likely to have such anticompetitive effects." (Accent added.)

The determination now in issue may be rested on this thesis alone. The adequacy of this measurement of proof was repeated in *United States v. General Dynamics Corporation,* 415 U.S. 486, 497, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974).

The figures for the year (1968) previous to purchase are informative on the issue of concentration and its trend. To begin with, 54.44 percent of the *all-dog-food* market in 1968 was held by only four firms. Of these, Liggett, holding 10.99 percent of that market, was fourth in line. During the same year, Ready Foods (later Perk) was sixth with 4.41 percent of the market. In 1969, in large part because of the acquisition, the top four firms increased their share of the market to 59.01 percent, and Liggett (now holding both Perk and Allen) with 15.76 percent of the market has risen to second place among all manufacturers of dog food.

In the submarket comprising all *canned* dog food, at least 59 percent of the sales volume was foreclosed by four firms in 1968. Liggett was in first place with 22.2 percent of the market, while Ready Foods (Perk) was fifth with 4.4 percent. In 1969, the top four firms in the submarket had increased their share to 64.4 percent, and Liggett had increased its share to 29 percent, fully 12 percent of the submarket ahead of its nearest rival.

The Commission read these ratios as establishing "undue concentration", under the circumstances, in both the all-dog-food market and the canned-dog-food submarket. This interpretation was fully warranted by analogous conclusions in recent precedents. *E. g.; United States v. Pabst Brewing Co.,* 384 U.S. 546, 550, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966); *United States v. Continental Can Co.,* 378 U.S. at 461, 84 S.Ct. 1738; *United States v. Aluminum Co. of America,*

377 U.S. 271, 277–81, 84 S.Ct. 1283, 12 L.Ed.2d 314 (1964); *United States v. Philadelphia Nat'l Bank,* 374 U.S. at 364 n. 41 et seq., 84 S.Ct. 1715.

Our judgment is that this determination was well within the range of the expertise of this administrative agency, and we cannot invalidate it as unwarrantable. In this appraisal, we must be mindful throughout that the Commission is commanded only to weigh what under the circumstances presented *"may"* be the effect of the merger.

*Summary*

As the decision of the Federal Trade Commission is in accordance with law and is in all respects supported by substantial evidence, the order of divestiture will be affirmed on the basis of its opinion.

Affirmed.