Barry ESCOTT and others, Plaintiffs,

v.

BARCHRIS CONSTRUCTION CORPO-RATION, and others, Defendants-Respondents,

George Hall, and others, Intervenors-Appellants.

No. 260, Docket 29261.

United States Court of Appeals
Second Circuit.

Argued Dec. 16, 1964.

Decided Jan. 18, 1965.

Wm. Francis Corson, New York City (Garey & Garey, Allan K. Peckel, New York City, of counsel), for appellants.

Ralph M. Carson, New York City (Thomas P. Griesa, New York City, of counsel, Davis, Polk, Wardwell, Sunderland & Kiendl; Ferris, Bangs, Davis, Trafford & Syz; Emmet, Marvin & Martin; Olwine, Connelly, Chase, O'Donnell & Weyher; Milbank, Tweed, Hadley & McCloy; Sims & Friedman; Mullane & Moukad, New York City), for appellees.

Jack Friedman, New York City (Theodore R. Schreier, Leonard Sims, Sims & Friedman, New York City, of counsel), for appellees Vitolo, Russo and Pugliese.

Max Schoengold, New York City (Schoengold & Sporn, New York City), for appellee Birnbaum.

Philip A. Loomis, Jr., General Counsel, Securities and Exchange Commission, Washington, D. C. (David Ferber, Solicitor, Michael Joseph, Attorney, SEC), as amicus curiae.

Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge:

This action was brought under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, by certain holders of debentures of the Barchris Construction Corporation, in behalf of themselves and others similarly situated to recover damages for a false registration statement. Another twenty-four debenture-holders have moved to intervene in the action as additional parties plaintiff. The motion to intervene was denied in the district court on the ground that the proposed intervenors were barred by the statute of limitations contained in Section 13 of the Securities Act of 1933. We reverse this determination.

Section 13 is codified as 15 U.S.C. § 77m which, in relevant part, provides:

> "No action shall be maintained to enforce any liability created under section 77k * * * of this title [Section 11] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, * * *. In no event shall any such action be brought to enforce a liability created under section 77k * * * of this title more than three years after the security was bona fide offered to the public."

For the purposes of this appeal we must assume that the action brought by the original plaintiffs herein was brought within the prescribed time. The sole question which we have to decide is whether the proposed interveners are barred because, although the original action was timely brought, the motion to intervene was made more than one year after the proposed intervenors discovered or should have discovered the falsity of the registration statement.

A literal reading of the statute supports the view that its requirements have been satisfied since the only action with which we are concerned was brought within the statutory period. There is no

attempt here to bring or maintain any action after the one year limitation.

But, it is argued, since the proposed interveners could not now bring new actions they are barred from asserting their claims in the pending action although the statute had not run on their claims when the pending action was instituted.

■ The answer to this argument is to be found in the representative character of the pending action. That action was brought as a "class action" under the provisions of Rule 23 of the Federal Rules of Civil Procedure. It falls squarely within the terms of Rule 23(a) (3) since there are questions of law and fact which are common to all the claims asserted. In fact the question of the falsity of the registration statement is almost certain to be the real issue in the litigation. The theoretical possibility of having to try that issue thirty-five hundred times, once for each of the $1000 bonds, of the total issue of $3,500,000, and the practical possibility of trying it several times (there are now twenty-nine plaintiffs claiming $469,661.75; the addition of the proposed intervenors would bring that figure to fifty-three claiming $531,-214.60) demonstrate the desirability of providing for a representative action in which the issue of falsity need be tried only once. The Advisory Committee's Note on the proposed amendment to Rule 23 suggested that the kind of situation we have here, "a fraud perpetuated [perpetrated] on numerous persons by the use of similar misrepresentations," is an "appealing situation for a class action." [1] The obvious desirability of avoiding a multiplicity of actions turns us toward favoring the representative suit and encouraging its use.

In our complex modern economic system where a single harmful act may result in damages to a great many people there is a particular need for the representative action as a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group. In a situation where we depend on individual initiative, particularly the initiative of lawyers, for the assertion of rights, there must be a practical method for combining these small claims, and the representative action provides that method. The holders of one or two of the debentures involved in the present action could hardly afford to take the risk of an individual action. [2] The usefulness of the representative action as a device for the aggregation of small claims is "persuasive of the necessity of a liberal construction of * * * Rule 23." Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir. 1941) ; and see generally Kalven and Rosenfield, The Contemporary Function of the Class Suit, 8 Univ. of Chi.L.Rev. 684 (1941).

■ If we are to give full recognition to the representative character of the action we must hold that the statute of limitations is tolled for those in whose behalf the representative action is brought as well as for those who actually bring the action.[3] "If a class action is maintainable as such, it is incongruous to say that the absent members, who are represented by those present, may not rely upon the commencement of the action by their brethren to toll the running of the statute." Union Carbide and Carbon Corporation v. Nisley, 300 F.2d 561, 590 (10th Cir. 1962), appeal dismissed, Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1963).

1. Committee on Rules of Practice and Procedure of the Judicial Conference of the United States Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, p. 107 (1964).

2. The present price of the debentures does not appear in the record, but it does appear that at one time a thousand dollar bond was selling for thirty dollars.

3. Of course such an action can be brought only in behalf of those who have valid claims at the time the action is instituted. A class action cannot have the effect of reviving claims which are already barred by the statute.

If we turn on the other hand to the position of the defendants, we find nothing in the purpose or policy of the statute of limitations which would be defeated by holding that the statute was tolled by the bringing of the class suit. In Order of R. R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944) the Supreme Court said:

"Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

In the present case the claims were not allowed to grow stale. Before the period of limitations had expired an action was instituted. The defendants were thus made aware of the nature of the evidence that would be needed at the trial. Since the action was brought on behalf of all others similarly situated, the defendants were put on notice of the possibility of claims aggregating the full sales price of all the debentures. There can have been no occasion for surprise when these additional plaintiffs sought to intervene.

Judge Frank, speaking for our court, said in York v. Guaranty Trust Co. of New York, 143 F.2d 503, 529 (2d Cir. 1944), reversed on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945):

"As to suits under (3), no less than those under (1) or (2), the Rule [23] unequivocally tells all persons having claims of the type therein described that one or more of them may begin such a class action 'on behalf of all' when the 'class' is 'so numerous as to make it impracticable to bring them all before the court.' Any non-accepting noteholders, relying on that assurance, were justified in believing that plaintiff's suit was begun on their behalf although they were not before the court. To hold that such noteholders cannot, as to lapse of time, have the benefit, by intervention, of the institution of the suit by plaintiff would be to convert the Rule into a trap."

The defendants argue that there is no trap because if the court decides that the statute is not tolled, the parties in whose "behalf" the action was brought have no right to depend upon that action for the protection of their claims against the running of the statute. This result is said to arise from the maxim "Ignorance of the law is no excuse." But of course Judge Frank was not talking about the law but about the practical realities of the situation. Whatever the law is declared to be, it would still be true that claimants, hearing that an action had been brought on their "behalf," would believe that they did not themselves have to act in order too keep the statute of limitations from running. While the argument may not be dispositive it is certain that the existence of a representative action which does not have the effect of tolling the statute does constitute a trap.

Thus all arguments based upon policy appear to favor permitting the applicants to intervene. Turning to authority we find that the only appellate authority that there is on the point supports the proposed interveners' position. The two relevant cases are Union Carbide and Carbon Corporation v. Nisley, supra, in the Tenth Circuit, and York v. Guaranty Trust Co. of New York, supra, in our own Circuit. Misapplied ingenuity may find it possible to distinguish York on the facts, so that what Judge Frank thought of as his holding can be classified as dictum. It seems to us that the opinion in York is highly persuasive, if not binding.

Reversed.

FRIENDLY, Circuit Judge (concurring):

While I concur in the judgment of reversal, the combination of some ambiguity in the pertinent statute, 15 U.S.C. § 77m, with the unsatisfactory character of F.R.Civ.P. 23(a)[1] makes the case more difficult for me than it is for my brothers.

A number of the considerations advanced in the court's opinion seem rather inconclusive. Thus, I cannot see how the undoubted utility of the spurious class action in avoiding a multiplicity of trials of the same issue calls for the grant of intervention after the statute of limitations would bar an independent action by the proposed intervenors; if economy of judicial time were the only consideration, denial would provide even more. Neither is it altogether clear that prolonging the period for intervention makes the bringing of the class action more attractive to the sponsors. Although this will increase the recovery and the attendant fees if the action succeeds, it will also tempt potential intervenors to stay on the side lines and watch the progress of the game, and thus place on the initial plaintiffs a heavier current and possibly ultimate burden. The argument that initiation of the action gives notice to the defendants to get their evidence on the issues into shape meets most of the statutory policy outlined in Order of R. R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788 (1944), but not quite all of it. Even on appellants' view, one litigable issue is whether the would-be intervenors had, or should have, discovered the untrue statement or omission more than one year before the date when the action was instituted, see fn. 3 to the court's opinion, and memories on this may "have faded, and witnesses have disappeared," if the intervention is too long postponed. Similar considerations may apply to

proof of damages, and to defenses individual to a particular plaintiff. Agreeing with my brother Hays that defendants' answer to Judge Frank's "trap" argument, York v. Guaranty Trust Co., 143 F.2d 503, 529 (2 Cir.1944), rev'd on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), is unrealistic, I think the argument itself is equally so when it is invoked on behalf of intervenors not shown to have known of the class action before the statute ran as to them.

The authorities on which the court relies are not so strong as they might appear. It is indeed profitless to argue whether "dictum" or "holding" best characterizes Judge Frank's statement in York that a spurious class action tolls the statute of limitations for later intervenors. What is clear is that the intervenors in question were not before the court and that the statement was initially framed without benefit of argument from counsel. See Appellee's Petition for Rehearing, pp. 19–20. While the question was raised on rehearing, the Court's attention at that time undoubtedly centered on the quite different problems that led Judge A. N. Hand to withdraw his concurrence, see 143 F.2d at 529–531, and the Supreme Court later to reverse. Moreover, despite the breadth of Judge Frank's language, the precise issue under the view of the majority in York was laches, erroneously believed to be the applicable principle, and not a statute of limitations. Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561 (10 Cir.1961), was decided over a powerful dissent by Judge Pickett, and a stipulation for dismissal of a petition for certiorari, Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962), prevented possible Supreme Court review.

With no truly pertinent legislative history called to our attention, we are thus left with little more than the words of § 13 of the Securities Act, very likely set

---

1. See Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts 98–99 (1964).

down without any thought of such a legal curiosity as the spurious class action, then relatively little known. See 3 Moore, Federal Practice ¶23.10[2] (2d ed. 1964). The words do favor the appellants, as Judge Hays' opinion shows. Yet one may wonder how far Congress realized it was saying something different than, e. g., "No person may maintain a claim arising out of a violation of [the pertinent sections] unless he brings an appropriate proceeding to enforce such claim within" etc., where the language would tend in the other direction. Still the words are what they are, and I see no sufficient reason for refusing to follow them when they lead to no untoward results.

But one ought not press too far. One necessary limitation is indicated in fn. 3 to the court's opinion. Moreover, our holding does not compel us to follow Judge Frank's "suggestion" in York and the Tenth Circuit's decision in Nisley that persons barred from initiating actions on their own behalf were to be allowed to intervene in spurious class actions at any time prior to final judgment. Judge Frank himself owned that his suggestion "does not apply to a jury case after the trial has concluded, for it would involve a new hearing of the evidence by the jury." Bascom Launder Corp. v. Telecoin Corp., 204 F.2d 331, 336 (2 Cir.), cert. denied, 345 U.S. 994, 73 S.Ct. 1133, 97 L.Ed. 1401 (1953); I would be inclined to extend that limitation to any trial or to a successful motion by the plaintiffs for summary judgment. See 3 Moore, supra ¶23.13, at 3476.[2] Finally I would limit decision to the particular statute of limitations here before us; on so close an issue, relatively slight differences in wording or policy or legislative history might demand a different result. Hopefully the necessity for such difficult determinations may be avoided by revision of Rule 23, see fn. 1 supra.

2. I am speaking only of persons barred by limitations from starting actions on their own account; different considerations might apply to persons not so barred who could rely on the judgment by

way of collateral estoppel. Cf. Zdanok v. Glidden Co., 327 F.2d 944, 954-956 (2 Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).