**Thomas E. FOSTER and Georgia Lee Foster, Plaintiffs-Appellees and Cross-Appellants,**

v.

**CITY OF DETROIT, MICHIGAN, Defendant-Appellant and Cross-Appellee.**

**Nos. 17840, 17843.**

United States Court of Appeals
Sixth Circuit.
Dec. 11, 1968.

William J. Coughlin, Asst. Corp. Counsel, Detroit, Mich., for appellant, Robert Reese, Corp. Counsel, Edward M. Welch, Asst. Corp. Counsel, Detroit, Mich., on the brief.

Elvin H. Wanzo, Detroit, Mich., for appellees.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

We here consider the appeal of the City of Detroit from a District Court judgment which holds that the city is liable to the appellees for damages suffered by them through condemnation activities of the city. In 1950 Detroit, preparatory to establishing a housing project, started condemnation proceedings to acquire the property of plaintiffs and others. These proceedings remained pending for some ten years and were then discontinued. The plaintiffs' complaint, filed after the discontinuance, alleged, and the District Court has found, that in the ten years that intervened between the commencement and discontinuance of the condemnation proceedings, the area involved became decayed and "blighted" and property values declined as a result of the condemnation action. That such occurred is not challenged by this appeal, and its truth is obvious.

The first condemnation case was discontinued on June 16, 1960. On November 22, 1961, plaintiffs, Thomas E. and Georgia Lee Foster, brought this class action under F.R.Civ.P. 23(a) (3) on behalf of themselves and other property owners similarly affected by the city's action. Federal Court jurisdiction was claimed under 28 U.S.C. § 1331, averring that the city's conduct violated rights of plaintiffs guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and that the courts of Michigan could not vindicate such rights. Plaintiffs' pleading asserted that Article XIII of the Michigan Constitution [1] and relevant decisions of its Su-

---

1. Article XIII, Sections 1 and 2, of the Michigan Constitution of 1908 provided:

"Sec. 1—Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.

"Sec. 2—When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the state, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property * * *."

preme Court limited plaintiffs' means of compensation for the damages to their property to recovery *in condemnation* for the "taking" of plaintiffs' property and that the time of "taking" was the date of the jury verdict. At the time the complaint was filed, November 22, 1961, no condemnation proceedings were pending. On April 4, 1962, Detroit, after regrouping the areas to make up a newly-planned urban renewal project, began a second condemnation case to obtain the property of plaintiffs. On May 21, 1962, the city moved to dismiss plaintiffs' complaint on several grounds, and on August 17, 1962, the District Court granted the motion, being of the view that it lacked jurisdiction of plaintiffs' case. Foster v. Herley, 207 F.Supp. 71 (E.D.Mich.1962). The District Judge there observed, *inter alia:*

"Again, the city initiated eminent domain proceedings, in which the property will be valued as unimproved property and the plaintiff will be denied any award for the losses suffered over the past twelve years as a result of misfeasance and nonfeasance attributable to the City of Detroit.

\* \* \* \* \* \*

"The action taken by the City of Detroit did not result in compensation's being made or secured. Hence, it did not accomplish a taking of the plaintiff's property. Anderson Trust Co. v. American Life Ins. Co., 302 Mich. 575, 5 N.W.2d 470. Whether damages should be awarded upon the plaintiff's claim is a matter to be determined under the law of torts. The decisions of the Michigan Supreme Court do not settle the question, but there are decisions of other courts recognizing an independent action to recover damages sustained through unreasonable delay or lack of good faith in prosecuting eminent domain proceedings that are subsequently abandoned.

\* \* \* \* \* \*

"To be sure, the considerations that have led to the recognition of an action for unreasonable delay in the aban-donment of such proceedings also underly the guaranty of the Fourteenth Amendment. \* \* \* This suit must turn upon a question of law unsettled in Michigan, and the most that can be said is that a constitutional question lurks in the background." 207 F.Supp. at 72, 73.

Upon appeal, this Court reversed, holding that lack of jurisdiction was not exhibited by the allegations of the complaint. Foster v. Herley, 330 F.2d 87 (6th Cir. 1964). We there said:

"The judgment is reversed and the case remanded to the District Court with directions to take jurisdiction in the matter and hear and decide the case on its merits. Section 2106, Title 28 United States Code; Dean Milk Co. v. City of Madison, 340 U.S. 349, 356–357, 71 S.Ct. 295, 95 L.Ed. 329." 330 F.2d at 91.

By the address made to us on the former appeal, we were advised of the commencement of the second condemnation case on April 4, 1962, but not that such proceedings had been completed and that plaintiffs had, on February 13, 1963, been awarded and paid the sum of $5,200 for their involved property pursuant to the condemnation jury's verdict. The record makes clear, however, that such amount represented the jury's estimate of the value of Foster's property on the date of its verdict and made no allowance for the damages suffered by plaintiffs for the blighting of their property by the ten-year pendency of the first condemnation case. Plaintiffs did not appeal the judgment of the Recorder's Court of Detroit affirming the jury's award. It is fair to say that at the time plaintiffs' complaint was filed and when the second condemnation was commenced and concluded, Michigan had not by statute or clear decisional announcement provided a remedy whereby to compensate property owners for damages consequent upon the long pendency of an ultimately-discontinued condemnation proceeding. In its answer to the plaintiffs' amended com-

plaint, filed May 14, 1964, the City of Detroit averred:

"Answering Paragraph Twelve, Defendant denies that Plaintiff's constitutional rights have been violated in that, under the provisions of the Michigan Statutes and the Charter of the City of Detroit, the value of Plaintiff's property is established at the time of the taking thereof in eminent domain proceedings and not at some prior time. Defendant affirmatively avers, that under the Constitution and laws of the state of Michigan and the Charter of the City of Detroit, it has been established that the time of taking in eminent domain proceedings is the date upon which the award of the jury is deposited and not some prior time."

On October 4, 1965, in a cause involving a condemnation case arising out of the same urban renewal project as the case at bar, the Supreme Court of Michigan recited that:

"the city [Detroit] contends that in Michigan * * * the time of taking is that time when necessity is determined and compensation made or secured." In re Urban Renewal Elmwood Park, 376 Mich. 311, 314, 136 N.W.2d 896, 898 (1965). (Also cited as City of Detroit v. Cassese).

The relevancy of this decision to the case at bar is later discussed herein.

Pursuant to our remand, this case came on for hearing before Judge Kaess who, on July 15, 1966, entered judgment for plaintiffs in accordance with his opinion reported as Foster v. City of Detroit, 254 F.Supp. 655 (E.D.Mich.1966). His order provided that plaintiffs would recover damages against the city according to a formula set out in the opinion and that all persons properly coming within the class on whose behalf the action was commenced, F.R.Civ.P. 23(a)(3), would have six months after judgment within which to intervene; that a Special Master would be appointed to "determine their membership in the class and the extent, if any, of their damages, in accordance with the formula adopted

in this opinion." 254 F.Supp. at 669. Upon the filing of notice of appeal by the City of Detroit, the District Judge ordered that "the appointment of and reference to the Special Master will be deferred pending such appeal, and that all questions to be determined by the Special Master will be continued until that time."

Appellant City of Detroit asks reversal upon these principal grounds:

1) That the District Judge erred in not reconsidering the question of jurisdiction after the proofs were taken in at the trial.

2) That plaintiffs' action and that of the unnamed members of the class are barred by laches and the Michigan three-year statute of limitations.

3) That the action is not a proper class action under Rule 23(a)(3), F.R.Civ.P. as that rule existed at the time of hearing and judgment.

4) That the members of the class should not have been allowed to intervene after verdict and judgment.

Appellees, Fosters, argue as cross-appellants that the District Court's formula for recovery was erroneous.

1) Jurisdiction.

The opinion of Judge Miller of this Court, reversing the dismissal of the cause for lack of jurisdiction, adequately discusses the rules by which the presence of Federal jurisdiction is determined. Foster v. Herley, 330 F.2d 87 (6th Cir. 1964). We read his opinion as saying that if the facts alleged in the plaintiffs' complaint were established, remedy would be available in the appropriate United States District Court. We think it fair to say that until the announcement of the decision in City of Detroit v. Cassese, 376 Mich. 311, 136 N.W.2d 896 (1965), it was the position of the City of Detroit that the law of Michigan did not provide any remedy to plaintiffs for what the City of Detroit did to them by its first, and aborted, condemnation case.

The city's pleadings in the District Court make clear the foregoing. In its answer to the second amended complaint,

filed after our decision sustaining the District Court's jurisdiction which was announced after the conclusion of the city's second condemnation case, it was averred:

> "Defendant admits that it has acquired Plaintiff's property by eminent domain proceedings and that the valuation, which was placed upon Plaintiff's property by the City of Detroit in said condemnation proceedings, was the present day [February of 1963—13 years after the beginning of the city's "freezing" of the area] fair cash market value thereof at the time said property was to be acquired in accordance with the provisions of the laws of the State of Michigan and the Charter of the City of Detroit."

> \* \* \* \* \* \*

> "Answering Paragraph Twelve, Defendant denies that Plaintiff's constitutional rights have been violated in that, under the provisions of the Michigan Statutes and the Charter of the City of Detroit, the value of Plaintiff's property is established at the time of the taking thereof in eminent domain proceedings and not at some prior time, Defendant affirmatively avers, that under the Constitution and Laws of the State of Michigan and the Charter of the City of Detroit, it has been established that the time of taking in eminent domain proceedings is the date upon which the award of the jury is deposited and not some prior time.

> "Answering Paragraph Thirteen, Defendant denies that Plaintiff is entitled to relief under the Fifth and Fourteenth Amendments of the United States Constitution and that there is any requirement that Plaintiff be put in the same position as if his property were not being condemned."

Prior to the hearing of this cause on our remand, the city's second condemnation was heard and plaintiffs, on February 13, 1963, were awarded $5,200. This amount was admittedly the jury evaluation of the property as of the time of its verdict. In evidence in this case is a 1954 appraisal made by the city valuing plaintiffs' property in the sum of $12,200. The city's appraisal, offered in the condemnation trial, put the current value of plaintiffs' property at $2,-900. The jury which awarded plaintiffs $5,200 was instructed by the state court judge:

> "Your duty is to find the value of the property at the time of taking, which is the time of your verdict and at no other time."

Another condemnation case appears to have covered an area in the city's Urban Renewal Project where the property owner had the same experience as plaintiffs —the starting of condemnation proceedings in 1950 and its abandonment 10 years later. At trial of a second condemnation suit involving that property, the jury was told to award compensation on the same basis as set out above. The Supreme Court of Michigan reversed and remanded for a new trial. In re Urban Renewal Elmwood Park (City of Detroit v. Cassese), 376 Mich. 311, 136 N.W.2d 896 (1965). The City of Detroit, there as here, contended that under the law of Michigan "the time of taking is that time when necessity is determined and compensation made or secured." The Michigan Court concluded, at 318:

> "When the taking occurred, whether in 1950 or at some later date, is a question of fact which should be determined by the jury. The value of the properties should then be ascertained as of the time of taking."

Citing our original remand of this case, the Michigan court further observed, at 318:

> "This result is supported by such cases as City of Cleveland v. Carcione, 118 Ohio App. 525, 190 N.E.2d 52, and Foster v. Herley, Director of the Detroit Housing Commission, 6 Cir., 330 F.2d 87, which recognize that, where condemnation proceedings are protracted, the whole character of an area may be changed to the detriment of the property owners during the course of the proceedings. If an area has been

made a wasteland by the condemning authority, the property owner should not be obliged to suffer the reduced value of his property."

The Court then concluded, at 320:

"An instruction by the judge to the jury, whether viewed as binding or advisory, that the time of taking is a time subsequent to when it actually occurred is so erroneous and misleading as to constitute error. The jury should have been properly charged. It was not. The charge could well have caused the jury to make an improper conclusion as to the applicable law."

■ That the law of Michigan was lacking in desirable clarity as of the time this lawsuit was started is emphasized by the several opinions in Thom v. State Highway Comm'r, 376 Mich. 608, 138 N.W.2d 322 (1965). What clarification of the state law that was provided in 1965 by the *Cassese* and *Thom* cases was not available to plaintiffs when the city in 1961 and subsequent years took the position that under Michigan law plaintiffs would have to suffer, without remedy, the loss visited upon them by the aborted first condemnation activity. Well did the plaintiffs turn to the United States District Court for relief. This Court held that the plaintiffs' complaint properly invoked federal jurisdiction. Foster v. Herley, 330 F.2d 87 (6th Cir. 1964). Our holding remains the law of this case.

■ The City of Detroit's action can properly be considered state action and the accomplishment of what it claimed it had the right to do would indeed be a deprivation of plaintiffs' property "without due process of law" and if the city's aborted condemnation was a "taking" it was to be carried on "without just compensation", thus would it offend the Fifth and Fourteenth Amendments to the United States Constitution. 28 U.S.C. § 1331 provided Federal jurisdiction to vindicate those rights. Such was the rule of Judge Miller's opinion which remanded this case to the District Court directing it "to take jurisdiction in the

matter and hear and decide the case on its merits." 330 F.2d at 91.

The jurisdictional question before us is not unlike that involved in Cuyahoga River Power Co. v. City of Akron, 240 U.S. 462, 36 S.Ct. 402, 60 L.Ed. 743 (1916). There the plaintiff alleged that, as a hydroelectric power company, it had certain rights in the waters of the Cuyahoga River and that the City of Akron had adopted an ordinance whereby it would acquire water rights belonging to the plaintiff power company. A District Court dismissed the action for want of jurisdiction because if plaintiff had the claimed rights, they could be protected in the state court. In reversing, Mr. Justice Holmes noted that the allegations of the complaint averred, *inter alia,* that the city's action would appropriate and destroy plaintiffs' rights without compensation and that "defendant purports to be acting under the ordinance, and that in so acting it violates art. I, § 10, and the 14th Amendment of the Constitution of the United States." He concluded:

"It is established that such action is to be regarded as the action of the state. Raymond v. Chicago Union Traction Co., 207 U.S. 20 [28 S.Ct. 7, 52 L.Ed. 78]. Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278 [33 S.Ct. 312, 57 L.Ed. 510]. Whether the plaintiff has any rights that the city is bound to respect can be decided only by taking jurisdiction of the case; and the same is true of other questions raised. Therefore it will be necessary for the District Court to deal with the merits, and to that end the decree must be reversed." 240 U.S. at 464, 36 S.Ct. at 403.

■ The City of Detroit argues that even though federal jurisdiction may have properly been invoked when the suit was commenced, the 1965 decisions of the Michigan Supreme Court in *Cassese* and *Thom* gave the Fosters a remedy in the Michigan courts and District Court jurisdiction was lost. The city asked the District Judge to take a fresh look at the jurisdictional question when the case

came on for trial in 1966. The jurisdiction, once properly invoked, remained. The fact that Michigan may have afforded a remedy does not destroy federal jurisdiction where the cause was one within its jurisdiction. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939).

> "The fact that the state courts afford a remedy will not in itself prevent recourse to the federal courts in cases over which they have jurisdiction. Barring exceptional circumstances, and subject to express federal statutory restrictions, a party may normally resort to a federal court without having first exhausted the *judicial* remedies of the state courts." 1A Moore's Federal Practice, ¶ 0.201, p. 2023

■ Certainly it would have been judicially indiscreet for the District Judge to have reconsidered jurisdiction in 1966 and then dismissed this action as an act of *abstention.* By that time plaintiffs' opportunity to appeal from the Recorder's Court "short change" award on condemnation or to bring a fresh action in the Circuit Court of Wayne County would be no doubt met with defense under Michigan's three-year statute of limitations.[2] As discussed below, we consider that the Fosters' action accrued in 1960 when Detroit abandoned its first condemnation; a suit started in 1965 or 1966, after *Cassese* and *Thom* allegedly announced rules providing state remedies, would be too late. Federal abstention is generally a matter of discretion.

2) Limitation and laches.

■ The city relies upon Michigan's statute, M.S.A. § 27.605, which provided that actions to recover damages to property shall be brought within three years.[3] Accepting that statute as applicable, we are of the view that it did not begin to run until the discontinuance of the first condemnation. The damage to plaintiffs' property was continuous and increasing during the pendency of the first condemnation, but the wrong did not reach fruition or give rise to the suit until the city dropped the condemnation. To put it another way, the deterioration of the property did not become a wrong until the city discontinued the condemnation and refused to recompense the property owners for the injuries to their properties.

We likewise hold that the commencement of this action tolled the statute as to claims of others in the class involved. In Escott v. Barchris Constr. Corp., 340 F.2d 731, 733–734 (2d Cir. 1965), cert. denied, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965), the Second Circuit stated:

> "If we are to give full recognition to the representative character of the action we must hold that the statute of limitations is tolled for those in whose behalf the representative action is brought as well as for those who actually bring the action. 'If a class action is maintained as such, it is incongruous to say that the absent members, who are represented by those present, may not rely upon the commencement of the action by their brethren to toll the running of the statute.' Union Carbide and Carbon Corporation v. Nisley, 300 F.2d 561, 590 (10th Cir. 1962), appeal dismissed, Wade v. Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1963)." 340 F.2d at 733.

■ We need spend little time on the question of laches. Plaintiffs' cause of action did not accrue until the discontinuance of the first condemnation on June 16, 1960. This suit was started on November 22, 1961. Certainly the city suffered no disadvantage by this delay in instituting suit.

3) Whether this is a proper class action.

---

2. M.S.A. §§ 27A.5805(7) and 27A.5827, C.L.Mich.1948, §§ 600.5805(7), 600.5827 [P.A.1961 No. 236].

3. This statute is now M.S.A. § 27A.5805 (7).

■ Appellant city argues that this suit did not present a proper class action within the meaning of Rule 23(a) (3) F.R.Civ.P. as that rule existed before the 1966 amendment thereto. We consider the District Judge's opinion adequately and correctly discusses this question. We quote the following:

"Defendant contends that the class of persons on whose behalf the action is brought has not been adequately identified, that there is no showing that these persons are so numerous that they cannot be brought before the court, that named plaintiffs do not adequately represent the class, that there is no showing that each member of the class has a claim for the minimum jurisdictional amount, and that there are not sufficient questions of law or fact in common to warrant a class action.

To the contrary, the class has been identified as consisting of those property owners within the 'Mich. 1–11' area who have been subject to the dual condemnation actions here involved. Clearly the number of persons in an area encompassing nearly 25 city blocks is too large for it to be practicable to bring them all before the court. Plaintiffs, as members of the class, with no interests in conflict with the class, are such persons as will 'fairly insure the adequate representation' of the class."

\* \* \* \* \* \*

"Defendant strongly asserts that while there may be some common questions of fact or law, they are not sufficient to warrant a class action, especially in view of the number and variety of proofs relating to each separate parcel of property. Defendant relies heavily upon the case of Keavy v. Anthony, 2 F.R.D. 19 (D.R.I.1941), in which the court refused to allow numerous property owners to maintain a class action against municipal officials for destruction of houses damaged in a hurricane, on the ground that there were so many different questions of law and fact af-

fecting the several rights that the jury might be confused. The court indicated that it was unwilling to open up a new field of litigation in the federal courts on such facts. However, in the present case there are important common questions of law and fact affecting all members of the class which override the factual differences regarding the damages suffered by each individual. Thus, it appears that a class action under Rule 23(a) (3) is proper in this situation." 254 F.Supp. at 667, 668.

4) Intervention after judgment.

■ The District Judge's opinion provides:

"The unnamed plaintiffs will have a period of six months, in which to appear and file claims before a special master who will determine their membership in the class and the extent, if any, of their damages, in accordance with the formula adopted in this opinion." 254 F.Supp. at 669.

It should be mentioned that at the beginning of the trial the District Judge had a long list of names of members of the class and many entered appearances at that time. We may assume, however, that formal notices and proper intervention procedure will be followed upon our remand.

On this question we again content ourselves with this short excerpt from the District Judge's opinion:

"Finally, the courts have been divided upon the question of intervention by members of the class after the rendition of a favorable verdict. Our line of authority is to the effect that rule 23(a) (3) is merely a permissive joinder device, and that consequently only those persons who are actually parties to the litigation may share in the judgment. Other courts, in cases where there has been an identifiable class, have allowed unnamed plaintiffs to share in the judgment obtained by their representatives, insofar as each is able to prove both membership in

the class and damages. As stated by Justice Murrah in the *Union Carbide* decision, 'the latter solution undoubtedly results in the more expeditious and efficient disposition of litigation and ought therefore to be favored.' The view favored by Justice Murrah has been followed in the more recent cases, and appears to be more in accord with the concept and purpose of class actions. It is, therefore, adopted by this court." 254 F.Supp. at 668.

The District Judge's holding is supported by York v. Guaranty Trust Co. of New York, 143 F.2d 503, 528–529 (2d Cir. 1944), rev'd on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231 (1945); Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561, 588–589 (10th Cir. 1962); Escott v. Barchris Constr. Corp., 340 F.2d 731, 733–734 (2d Cir. 1965), cert. denied, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965).

A principal objection to intervention is not present here, i. e., that the members of the class can intervene after a decision favorable to their interests in order to secure the benefits of the decision for themselves, although they are unaffected by an unfavorable decision and can institute suit themselves in quest of a favorable result. Here, had members of the class received an unfavorable decision from this Court, the statute of limitations would have barred another suit at this time. By deciding at an earlier date not to institute suit themselves, they made an election to be bound by the outcome of this suit and waived other remedies.

5) Appellees' cross-appeal.

■■ Fosters, as appellants, argue that the District Court's formula for recovery, based upon a "taking" formula, was erroneous and that plaintiffs should be permitted a recovery based upon what they call a consequential damage formula, which differs from the District Court's formula principally in that it would allow plaintiffs damages for loss of anticipated future rents from the time their property became unrentable due to the blighting of the area until the taking of the property in the state court proceeding. We consider that damages for such lost rent would be too speculative in nature and whatever labels are applied, the District Court's formula provides the Fosters with a recovery whereby they can be made whole for any uncompensated loss that they have suffered. The time when the city's involved actions first adversely affected the properties of the intervenors will be a matter for determination by the Special Master, based upon proofs before him.

We have considered other contentions of the appellant city, and find them without merit.

The District Court judgment is affirmed and the cause is remanded for further proceedings consistent therewith.