**Newton H. ANCARROW and Josephine Ancarrow, Appellants,**

**v.**

**CITY OF RICHMOND, Appellee.**

**Newton H. ANCARROW and Josephine Ancarrow, Appellees,**

**v.**

**CITY OF RICHMOND, Appellant.**

**Nos. 78–1178, 78–1191.**

United States Court of Appeals, Fourth Circuit.

Argued, Jan. 8, 1979.

Decided June 5, 1979.

Stephen D. Annand, Fairfax, Va. (Robert C. Dunn, Cohen, Vitt & Annand, P. C., Alexandria, Va., on brief), for appellants in 78–1178 and appellees in 78–1191.

C. Tabor Cronk, Asst. City Atty., Richmond, Va. (Albert J. FitzPatrick, Asst. City Atty., Richmond, Va., on brief), for appellee in 78–1178 and appellant in 78–1191.

K. K. HALL, Circuit Judge:

Plaintiffs Newton H. and Josephine Ancarrow filed suit in district court against the City of Richmond and various city officials, alleging that the city's continuing pollution of the James River had rendered their property, developed as a marina, valueless for this particular use—a "taking" in the constitutional sense. Federal jurisdiction was invoked under admiralty law, federal common law, 42 U.S.C. § 1983 and the fourteenth amendment. The district court held that a valid claim was stated under the fourteenth amendment, but abstained to allow the Virginia courts to determine the nature and extent of plaintiff's riparian rights in the public waters of the James River. Because we think that no federal question is presented in this case, we reverse and remand for dismissal of the complaint.

I.

In 1961 and 1962 the plaintiffs purchased land along the James River, near the City of Richmond sewage treatment plant. For several years they made costly improvements to the property, attempting to develop it into a marina. However, the river's polluted condition made it unattractive to the public for recreational purposes, frustrating the Ancarrows' attempts to enhance their property's value as a marina.

It is conceded that the level of pollution today is no greater than at the time the plaintiffs purchased their property.[1] Further, the plaintiffs do not contend that the pollution is in any way violative of applicable state or federal law.

In 1975, the city condemned the property for expansion and improvement of the adjacent sewage treatment plant. In state court proceedings, the fair market value of the property for all existing and prospective uses was established; little value was attributed to the existing and prospective marina use. The Ancarrows did not appeal the state court's valuation of the property. Instead, they brought this action in federal court seeking damages for the unrealized value of their marina improvements, alleging that the City of Richmond had "taken" their property *prior* to the condemnation by continuing to pollute the river.

The defendants contended that the claim was res judicata because it could have been litigated in the state condemnation proceed-

1. The Ancarrows allege that, before they made their marina improvements, city officials represented to them that the city's dumping of sewage into the James River would abate and, absent that representation, no improvements would have been made.

ings. The district court rejected this defense and held that a cause of action under the fourteenth amendment would lie if some property interest had been taken by the city's continuing pollution of the river. However, the court abstained from hearing the case until the parties sought a determination in the Virginia courts of the nature and extent of plaintiffs' property interest in the water quality of the river. We think abstention was unnecessary because, on the facts alleged by the plaintiffs, no federally protected right has been violated.

## II.

As noted previously, the plaintiffs alleged four separate bases for federal court jurisdiction. In addition, they asked the district court to entertain four state causes of action in its exercise of pendent jurisdiction: nuisance, negligence, trespass and a taking of or damage to property without compensation in violation of Virginia's constitution.

█ It is well established in this circuit that a claim for damages arising from a public body's lawful pollution of state waters is not within either federal common law or admiralty jurisdiction. No federal common law action will lie "where the controversy is strictly local, where there is no claim of vindication of the rights of another state and where there is no allegation of any interstate effect" attending the pollution. *Committee for Consideration of Jones Falls Sewage System v. Train,* 539 F.2d 1006, 1010 (4th Cir. 1976). Likewise, we cannot review this claim under admiralty jurisdiction because the alleged harm to the Ancarrows' property has not resulted from a traditional maritime activity. *Moore v. Hampton Roads Sanitation District Commission,* 557 F.2d 1037, 1038–39 (4th Cir. 1977) (en banc), *rev'g* 557 F.2d 1030 (4th Cir. 1976); *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978).

We think the plaintiffs' cause of action sounds in traditional property law and can only be reviewed in federal court as a unconstitutional taking of property—either a taking of plaintiffs' riparian rights or an interference with their related land-based property rights to develop a successful marina adjacent to the river.[2] Since we agree with the district court that res judicata is not a bar to federal review of the plaintiffs' claims, we must reach the constitutional issue.

## III.

█ Condemnation proceedings are by their nature res judicata for any claims involving valuation of the property, existing and future, at the time of the condemnation. But they are not res judicata for an alleged devaluation of the property which occurs before and is independent of the actual condemnation. A condemning body's prior negligent or intentional interference with valuable property rights cannot be disregarded by federal or state courts merely because it can legally take record title and possession of property for a public use. *See Foster v. City of Detroit, Michigan,* 405 F.2d 138, 141 (6th Cir. 1968).

For the *de jure* condemnation and the *de facto* taking, plaintiffs' claims for compensation rest upon two unrelated acts of the condemning body. Distinct issues of law and fact are presented. Different property rights are involved and those property rights must be valued separately—once for the taking of title, with valuation set at or before the time of the condemnation, and once for the prior taking, with damages awarded for devaluation before condemnation. The *de facto* taking claim was not adjudicated in the condemnation proceedings, nor does it appear that it could have been under Virginia law. *See Kornegay v.*

---

**2.** An action under 42 U.S.C. § 1983 lies only for denial of a federally protected right. Any equitable contract law claim for detrimental reliance on alleged misrepresentations of city officials would pose questions of state law only. See n. 1 *supra.* Perceiving no constitutional rights involved here other than the essential constitutional right to be free from an uncompensated taking of property, we consider the § 1983 claim to rise and fall with that right. *See Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 2051 n. 4, 56 L.Ed.2d 611 (1978).

*City of Richmond,* 185 Va. 1013, 1030, 41 S.E.2d 45, 53 (1947). *See also Fugate v. Martin,* 208 Va. 529, 159 S.E.2d 669 (1968).[3]

Therefore, we turn to plaintiffs' claim that their property has been taken without compensation under the fourteenth amendment.

## IV.

■ The gravaman of plaintiffs' due process claim is that they have a riparian right to use public waters in a navigable stream, which was taken in the constitutional sense by the city's continuing pollution of the James River. Had the river been unpolluted at the time plaintiffs' property was condemned, the value of their marina improvements would have been enhanced and their condemnation recovery correspondingly greater. Accepting these factual allegations as true, in the posture of motion to dismiss, we think the claim meritless.

It is important to note at the outset that plaintiffs do not allege that there was a nuisance-like physical invasion of their exclusive land space. *See Darling v. City of Newport News,* 249 U.S. 540, 543, 39 S.Ct. 371, 63 L.Ed. 759 (1919); *Griggs v. County of Allegheny, Pennsylvania,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); *Nunnally v. United States,* 239 F.2d 521 (4th Cir. 1957); *Batten v. United States,* 306 F.2d 580 (10th Cir. 1962). Nor do they allege that their access to the James River was blocked, impairing their riparian use of it. *See United States v. Welch,* 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910). Rather, plaintiffs claim that they have a state-recognized riparian right to demand water of a particular purity, both for their own use and for the use of customers at their marina. They also claim a right which may best be termed a right of beneficial location to have the city put the public water of the James River to a use which is more favorable to their commercial marina development than the present use for sewage disposal.

## A.

■ Under Virginia law, a citizen's riparian right to use public waters of a particular purity is always subject to the superior right of the public to pollute those waters for sewage disposal. *DuPont Rayon Co. v. Richmond Industries,* 85 F.2d 981 (4th Cir. 1936). As Judge Parker wrote in *DuPont*:

"If the waters of the stream become polluted from [public sewage disposal], no right of the riparian owner is invaded, because his right to use such waters is subject to the superior right of the public; and any damage which he sustains because of the public use is damnum absque injuria. If complainant needs water of a peculiar purity for manufacturing purposes, it should be careful to locate its plant on a stream not subject to such a right of user on the part of the public; for it is clear under the law of Virginia that neither the public health nor the industrial development of its tidewater cities, both of which are dependent upon sewage disposal, can be subordinated to the rights of a riparian owner to make use of public waters for private purposes."

85 F.2d at 984. We think this reasoning applies with equal force to plaintiffs, who claim a superior right to use water of a particular purity for their marina development.

Plaintiffs contend that *DuPont* is not controlling because there has been an intervening change in Virginia law which limits the public's right to pollute and, by implication, gives them a new riparian right superior to the public's right. We cannot agree.

---

3. Although the issue could not have been raised in the condemnation proceedings proper, it does appear that the issue could have been raised in the state court under the permissive declaratory judgment jurisdiction of circuit courts. Va.Code §§ 8.01–184 and 186 (1977 Repl.Vol.). *See Stroobants v. Fugate,* 209 Va. 275, 163 S.E.2d 192 (1968). But plaintiffs cannot be penalized for failing to avail themselves of this alternative, for this in effect would impose a requirement of exhaustion of state remedies. *See Ballard Fish & Oyster Co. v. Glaser Construction Co.,* 424 F.2d 473, 475 (4th Cir. 1970); *Foster v. City of Detroit, Michigan,* 405 F.2d at 145.

Va.Code § 62.1–44.4 (1973 Repl.Vol.),[4] relied on by plaintiffs, is merely one portion of a statutory scheme to regulate the quality of the Commonwealth's waters. The statute does not by its terms purport to grant a new riparian right to private property owners which is superior to a city's state-regulated right to lawfully pollute public waters. Plaintiffs' argument that such a right is implied is untenable in light of the statutory language, and would bring about an absurd result: the creation of a new cause of action for riparian owners which would in effect penalize the city for its full compliance with that regulatory scheme. Nothing in the statute leads us to believe that the General Assembly intended Virginia's cities to be caught in such a legal revolving door. Therefore, any claim that the Ancarrows' riparian rights were "taken" by the city's continuing lawful pollution was laid to rest by our decision in *DuPont.*

### B.

Plaintiffs also contend that they have some right of beneficial location: in essence, that the city cannot constitutionally use the James River in a way which diminishes the value of land along that river. More particularly, plaintiffs claim that the city has, by its pollution of the river, "taken" the inherent commercial value which attaches to their property by virtue of its location near public waters. This contention fails because no such property right exists.

Although the fourteenth amendment protects a property owner from government's direct interference with the use of his property when that interference substantially eliminates the value of his title to it, *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *Baltimore & P. R. Co. v. Fifth Baptist Church,* 108 U.S. 317, 2 S.Ct. 719, 27 L.Ed. 739 (1883); it does not protect the owner from fluctuations in the value of his property resulting from governmental decisions to put neighboring public property to a lawful, albeit unattractive, use. *Reichelderfer v. Quinn,* 287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331 (1932). And, even assuming that plaintiffs have suffered substantial loss in the value of their marina improvements due to the city's continuing lawful pollution, no action under the fourteenth amendment will lie unless some distinct property right, personal to plaintiffs, has been taken. Here, plaintiffs have suffered a consequential injury which, "though greater in degree than that of the rest of the public, is the same in kind." Id. at 320, 53 S.Ct. at 179.

The unattractive use to which the city has put the James River may have a very detrimental effect on the value of property along the river's shore.

> "But the existence of value alone does not generate interests protected by the Constitution against diminution by the government, however unreasonable its action may be. The beneficial use and hence the value of abutting property is decreased when a public street or canal is closed or obstructed by public authority,

**4.** § 62.1–44.4. Control by State as to water quality.—(1) No right to continue existing quality degradation in any State water shall exist nor shall such right be or be deemed to have been acquired by virtue of past or future discharge of sewage, industrial wastes or other wastes or other action by any owner. The right and control of the State in and over all State waters is hereby expressly reserved and reaffirmed. (2) Waters whose existing quality is better than the established standards as of the date on which such standards become effective will be maintained at high quality; provided that the Board has the power to authorize any project or development, which would constitute a new or an increased discharge of effluent to high quality water, when it has been affirmatively demonstrated that a change is justifiable to provide necessary economic or social development; and provided, further, that the necessary degree of waste treatment to maintain high water quality will be required where physically and economically feasible. Present and anticipated use of such waters will be preserved and protected.

or a street grade is raised, or the location of a county seat, or of a railroad is changed. But in such cases no private right is infringed."

Id. at 319, 53 S.Ct. at 178–179 (citations omitted). We think this language dispositive of plaintiffs' claim that some right of beneficial location was taken in the constitutional sense by the city's decision to continue its lawful pollution of public waters. If the city, by exercising its statutory authority to pollute, were held accountable to riparian owners for indirect, consequential diminution of property value, the admonition of Justice Stone would be apt: "the powers of government would be exhausted by their exercise." Id. *See Nunnally v. United States,* 239 F.2d at 524.

### Conclusion

■ Having concluded that plaintiffs have no riparian right or other property right which was "taken" by the city's pollution of the James River, we perceive no other ground on which a fourteenth amendment claim could rest. Accordingly, we find that the district court erred in denying the city's motion to dismiss the complaint for failure to state a federal claim upon which relief may be granted.[5] The judgment of the district court is reversed, and the case remanded for dismissal of the complaint.

*REVERSED.*

---

**5.** Since the federal claims are without merit and should be dismissed before trial on the merits, it follows that the district court is without jurisdiction to entertain the pendant state claims. *Sigmon v. Poe,* 564 F.2d 1093, 1096 (4th Cir. 1977).